STATE OF ILLINOIS)
                 )SS
COUNTY OF WILL )

### IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
### WILL COUNTY, ILLINOIS

NIRAV THAKKAR
_____

                    VS                              CASE NO:_____

OCWEN LOAN SERVICING, LLC., et al.
_____

### SUMMONS

To each defendant: *Ocwen Loan Servicing, LLC.*

You are summoned and required to file an answer in this case, or otherwise file your appearance in the Office of the Clerk of this Court
_____ Building, Room_____.

_____, Illinois within 30 days after service

(Address)              (City)                                        of this summons, not

counting the day of service. **IF YOU FAIL TO DO SO, A JUDGEMENT OR DECREE BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.**

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, summons shall be returned to endorsed.

This summons may not be served later than 30 days after its date.

1719747089

WITNESS: October 6th, 2015 _____, 20____

**PAMELA J. McGUIRE**
Clerk of the Circuit Court

BY:_____
                                    (Deputy)

(Plaintiff's Attorney or Plaintiff if he is not represented by an Attorney)
NAME: Stephen Sotelo - The Homer Law Firm
ARDC# 6310214
Attorney for: Plaintiff
Address: 200 E. 5th Ave., Suite 123
City: Naperville, IL 60563
Telephone: 6304283311

## IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
## WILL COUNTY, ILLINOIS

| | | |
|---|---|---|
| NIRAV THAKKAR, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  15 L 713 |
| v. | ) | |
| | ) | |
| OCWEN LOAN SERVICING, LLC, a Delaware | ) | |
| limited liability company, and ALTISOURCE | ) | **JURY TRIAL DEMANDED** |
| SOLUTIONS, INC., a Delaware corporation, | ) | |
| | ) | |
| Defendants. | ) | |

### VERIFIED COMPLAINT AT LAW

Now comes Plaintiff, Nirav Thakkar ("Thakkar"), by his attorneys, who brings this action for damages against Ocwen Loan Servicing, LLC ("Ocwen") and Altisource Solutions, Inc. ("Altisource") (collectively, "Defendants"), for negligently or recklessly causing the wrongful break-in to Plaintiff's home, changing his locks, turning off his utilities, and removing his personal property, all without judicial process, on two separate occasions, just months apart.

### NATURE OF THE CASE

1.      Twice, Altisource and Ocwen negligently or recklessly caused the wrongful dispossession of Thakkar from his home, by breaking into his legally occupied house, locking him out, removing his personal property, and shutting off utilities, all in the face of clear evidence that the property remained legally occupied.

2.      On information and belief, no mortgage payments were past due when Thakkar was locked out and evicted from his home on the first occasion.

3.      Worse yet, the second lockout and eviction occurred after the mortgage was *paid in full*.

| Initial case management set for | |
|---|---|
| at: _9:00_ **a.m.** | |
| _01/25/2016_ | |
| Transaction ID : 1719747055 | |

1

4.     On both occasions, no judicial process was undertaken by Ocwen or Altisource before locking out and evicting Thakkar and taking his personal property.

## JURISDICTION AND VENUE

5.     Illinois has personal jurisdiction over the Defendants pursuant to pursuant to section 209 of the Illinois Civil Practice Law, because, *inter alia*, the tortious conduct complained of herein was committed within this State. 735 ILCS 5/2-209

6.     Venue for this action properly lies in Will County, Illinois, pursuant to section 101 of the Illinois Civil Practice Law, in that some of the transactions complained of herein out of which this action arose occurred in Will County. 735 ILCS 5/2-101.

## PARTIES

7.     Plaintiff Thakkar is an individual who resides in the real estate commonly known as 311 Danbury Drive, Naperville, Will County, Illinois (the "Subject Property").

8.     Ocwen is a Delaware limited liability company with its principal office at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409. Ocwen is a subsidiary of Ocwen Financial Corporation. Ocwen's Illinois registered agent is the Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, Illinois 62703. Ocwen is managed by Managers Ronald M. Faris (1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409) and Michael R. Bourque, Jr. (402 Strand Street, Frederiksted, St. Croix 00840, US Virgin Islands).

9.     Ocwen is in the business of, *inter alia*, servicing residential mortgage loans. As a loan servicer, Ocwen is responsible for mortgage administration activities, known as servicing activities, which generally include collecting payments from mortgagors; making advances to cover delinquent mortgage payments and other costs, such as the loss mitigation costs of protecting and maintaining properties that collateralize mortgage loans when mortgagors fail to do so; and pursuing collections from delinquent mortgagors.

2

2015L000713

10.     Altisource is a Delaware corporation with its principal office at 1000 Abernathy Road, Suite 200, Atlanta, Georgia 30328. On information and belief, Altisource does not have authority to transact business in Illinois and has no registered agent here in Illinois as required by Article 5 of the Business Corporation Act of 1983. 805 ILCS 5/5.05 *et seq.* Altisource's registered agent is The Corporation Trust Company, 1209 N Orange Street, Wilmington, Delaware 19801.

11.     Altisource is in the business of, *inter alia*, contracting with lenders and loan servicers, including Ocwen, to manage and preserve "at-risk" and foreclosed properties. Specifically, Altisource determines occupancy status of properties, and then "secures" them, on behalf of institutions such as Ocwen.

12.     On its website, Altisource advertises its services as follows:

> Altisource inspects and preserves hundreds of thousands of vacant pre-foreclosure and REO assets nationwide. With more than 20 years of asset management experience, a comprehensive and scalable suite of services is available to evaluate properties, improve asset values, protect investors from unforeseen liability and offer the detail required to optimize property investment decisions.

http://www.altisource.com/MortgageServices/DefaultManagement/PropertyPreservationandInspection.aspx, last visited September 16, 2015. The following is a screenshot from the same webpage:

| Inspection Services | Preservation Services |
|---|---|
| Occupancy Reports | Property Securing |
| Interior / Exterior Inspections | Repairs |
| Bankruptcy Inspections | Trash and Debris Removal |
| Fannie Mae Form 30 | Cash for Relocation |
| Deed-In-Lieu of Foreclosure Inspections | Demolition |
| Presidential FEMA | Utilities Management |
| Residential / Commercial Door Knock Services | Lawn Maintenance |
| Home Inspection for Originations | Winterization |
| Insurance Loss Draft Inspections | Bio-Hazard Remediation |
|  | Code Violation Abatement |
|  | Vacant Property Registration |

13. At times during 2013 and 2014, Altisource entered into various property inspection and preservation service contracts with Ocwen.[1] Through these contracts, Altisource, on behalf of Ocwen, agrees to determine the occupancy status of the property and to provide property preservation services, such as boarding up doorways, changing the locks or padlocking the entrance, winterizing the home, and removing debris from unoccupied property.

14. For the purposes of this Complaint, any references to the acts and practices of Ocwen shall mean such acts and practices that were performed by Ocwen, its employees, agents, representatives, subcontractors, and all persons or entities directly or indirectly under Ocwen's control.

15. For the purposes of this Complaint, any references to the acts and practices of Altisource shall mean such acts and practices that were performed by Altisource, its employees, agents, representatives, subcontractors, and all persons or entities directly or indirectly under Altisource's control.

## FACTS COMMON TO ALL COUNTS

16. Thakkar has resided in the Subject Property since 2007, much of the time as a lessee or beneficial owner of a resulting trust. Until he purchased legal title to the home in December 2013, Thakkar paid the mortgage payments directly to the mortgagee in full each and every month. On December 27, 2013, Thakkar then purchased the Subject Property, enjoying both legal and equitable title, and continued residing there.

17. At all times relevant to this Complaint, Thakkar was the legal occupant, resident, and possessor of the Subject Property.

---

[1] After a 2009 spinoff of Altisource from Ocwen, the two companies maintain a close relationship, it being reported that Altisource "still gets 65% of its revenues from Ocwen". *Available at* http://www.thestreet.com/story/13014130/1/ocwen-spinoff-altisource-soars-60-as-cooperman-lectures-management.html (last visited October 2, 2015).

I2F SUBMITTED - 1719747055 - HOMERLAWFIRM - 10/06/2015 03:18:25 PM          DOCUMENT ACCEPTED ON: 10/07/2015 09:34:24 AM

18.     From 2007 to early 2013, the Subject Property had a mortgage through GMAC.

19.     In early 2013, the mortgage was assigned, and Ocwen became the new servicer.

20.     Almost immediately following the assignment, Ocwen mailed a letter to Thakkar erroneously alleging that he had made a late payment sometime *before* the mortgage was assigned.

21.     Although he continues to dispute ever having made any such late payment, Thakkar paid Ocwen the approximately $94 late fee that they alleged was owed to avoid further aggravation.

22.     In October 2013, Ocwen again contacted Thakkar and erroneously alleged that the approximately $94 late fee was never paid and had snowballed into a larger amount.

23.     At the same time, Ocwen alleged that Thakkar had paid only about half of June 2013's mortgage payment. This too was erroneous and Thakkar disputed these allegations.

24.     At no time did Ocwen or Altisource ever initiate foreclosure proceedings in connection with the Subject Property, nor did they obtain any other court order allowing them to enter, secure, or take possession of the Subject Property.

25.     On December 27, 2013, Thakkar purchased the Subject Property and continued residing there. At that time, Ocwen was paid *in full*, with Thakkar even paying Ocwen all of its erroneous demands in order to buy the house and be done with Ocwen.

### The First Break-In and Wrongful Eviction (October 2013)

26.     On October 8, 2013, Altisource, under Ocwen's orders, direction and control, recklessly and unlawfully broke into the Subject Property.

27.     Upon returning home, Thakkar saw a metal plate where his door's deadbolt used to be, a new handle on the door, and a lockbox hanging from the door knob. Unable to gain access to his home through the usual means, Thakkar opened the garage door with his clicker and gained

5

access that way. Upon turning on the lights inside, Thakkar saw that his rear patio door had been busted, cabinets open, clothes everywhere, and private papers disheveled.

28.     Realizing he had been burglarized and robbed, Thakkar immediately contacted the police and waited outside in his car for an officer to arrive.

29.     Upon arriving, the police dusted and fingerprinted the home; and, a locksmith was called out to change the lock on the front door.

30.     More than $20,000 in personal property was reported missing, including but not limited to watches, two I-pads, a personal and business laptop, sports jerseys hanging in his closet, and a memory card with baby pictures.

31.     It was also discovered that the bandit had turned off Thakkar's water and water heater.

32.     About ten (10) days then go by where no one knew who broke into Thakkar's home. During this time, Thakkar stayed the nights at his parents' house, because his rear patio door was not secure and he feared for his personal safety and well-being.

33.     A little more than a week after the incident, Thakkar found a note on the ground outside his home behind some bushes, saying to call Altisource if there were any questions about the Subject Property.

34.     Upon calling Altisource, Thakkar was told to call Ocwen for more information about the Subject Property.

35.     Upon calling Ocwen, it was confirmed that the Subject Property was not in foreclosure and that the break-in was a mistake. Ocwen apologized and proceeded to give Thakkar the code to the lockbox – a code that worked.

6

36.    Ocwen further told Thakkar that they could either give him instructions over e-mail on how to turn back on his utilities, or Ocwen could send Altisource back out turn them back on. After Thakkar chose the latter option, Altisource then took an additional week before coming back out to turn on the water and water heater, at which time it was discovered that the water heater was no longer working at all.  Thakkar then had to call serviceperson, who charged him $350 for the repair to the water heater.

37.    At no time did Altisource or Ocwen give Thakkar any advance notice that they would be undertaking any of the foregoing actions (*i.e.*, breaking in, changing locks, turning off utilities, and removing personal property).

### The Ocwen Mortgage Payoff (December 2013)

38.    Thakkar then purchased legal title to the Subject Property on December 23, 2013.

39.    At that time, the mortgage serviced by Ocwen was paid off *in full*.  Thakkar took out a mortgage with an entirely different company, leaving Ocwen with no further interest in the Subject Property.

40.    A Release of Mortgage dated January 22, 2014, was subsequently recorded by Ocwen.

### The Second Break-In and Wrongful Eviction (January 2014)

41.    On January 13, 2014, Altisource, under Ocwen's orders, direction and control, recklessly and unlawfully broke into the Subject Property *yet a second time*.

42.    This time, Thakkar came home to find that his door's deadbolt had been drilled open, metal shavings all over the ground.  On information and belief, Altisource drilled through the deadbolt because Thakkar had secured his rear patio door after the first break-in, making it

7

more difficult for Altisource to break-in on the second occasion. Like the time before, Thakkar again had to enter through his garage door.

43.     Like before, the police were immediately called, this time with an idea of the identity of the perpetrator.

44.     On this occasion, approximately $74,613.85 in personal property was reported missing, including but not limited to baseball cards that Thakkar had been collecting for thirty (30) years, tools in the garage, and a folding table.

45.     At that time, Thakkar called Ocwen in the presence of the police officer, at the police officer's request, but Ocwen was closed.

46.     Thakkar called Ocwen the next day, who yet again gave Thakkar a working lockbox code. Ocwen also instructed Thakkar to call Altisource, who denied having any record of the Subject Property, but who knew enough to tell Thakkar to call Ocwen. Both calls were recorded.

### Damages

47.     Thakkar's approximately $95,000 in missing personal property was never returned despite Thakkar's demands for the same.

48.     Thakkar had to hire a locksmith to replace deadbolts and had to have his patio door fixed.

49.     Thakkar had to pay to have his water heater fixed after it was shutoff and broken.

50.     Defendants' misconduct left Thakkar was without water for the period of at least one week.

51.     Defendants' extreme and outrageous misconduct has left Thakkar in a continuous state of fear and insecurity.

52.    Thakkar has suffered other damages, including but not limited to reasonable attorney's fees, costs, and expenses to file this action.

53.    To date, Defendants continue to deny any wrongdoing.

54.    Thakkar's damages were proximately caused by Defendants' actions, which were carried out in conscious disregard of Thakkar's rights; with reckless indifference to the consequences, with Defendants aware, from their knowledge of existing circumstances and conditions, that their conduct probably would cause injury to another; and/or after Defendants' failure to discover the danger through carelessness when it could have been discovered by the exercise of ordinary care.

## COUNT I - CONSUMER FRAUD

55.    Thakkar re-alleges Paragraphs 1 through 54 as if fully set forth in this Count.

56.    Ocwen was at all times relevant to this Complaint and remains engaged in trade and commerce in the State of Illinois by advertising, offering for sale, selling and providing mortgage servicing and related financial services within the State of Illinois.

57.    Altisource was at all times relevant to this Complaint and remains engaged in trade and commerce in the State of Illinois by advertising, offering for sale, selling and providing property management and property preservation services within the State of Illinois.

58.    Section 2 of the Consumer Fraud Act prohibits unfair or deceptive practices:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

9

815 ILCS 505/2.

59. While engaged in trade or commerce, Defendants committed unfair and/or deceptive acts or practices declared unlawful under Section 2 of the Consumer Fraud Act, 815 ILCS 505/2, by:

a. Representing to Thakkar, either expressly or by implication, and with the intent that Thakkar rely on such representations, that Thakkar was not entitled to occupy the Subject Property when Thakkar was, in fact, entitled to occupy the Subject Property;

b. Taking possession of the Subject Property without legal justification;

c. Unlawfully breaking into Thakkar's legally-occupied home;

d. Locking Thakkar out of his home;

e. Turning off the water or other utilities in Thakkar's home;

f. Unlawfully removing personal property from Thakkar's legally-occupied home;

g. Representing to Thakkar, with the intent that Thakkar rely on such representations, that Thakkar will be reimbursed or have his personal property returned, but then failing to reimburse Thakkar or returning his personal property;

h. Providing notices to Thakkar which failed to inform him that the has the right to occupy the Subject Property until a court order to the contrary has been entered;

i. Failing to adequately train, manage and supervise their agents or subcontractors in the performance of property inspection and preservation services.

j. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of services;

10

k. Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another;

l. Using deceptive representations in connection with services;

m. Representing that services have approval that they do not have or that Defendants have approval of status that they do not have;

n. Engaging in other conduct which creates a likelihood of confusion or misunderstanding.

60.     Thakkar suffered actual damages as a result of Defendants' unfair and/or deceptive acts or practices.

WHEREFORE, Plaintiff requests that he be awarded damages against Defendants in an amount to be proven at trial along with punitive damages, attorney's fees, costs, expenses and any other just relief to be determined by the Court.

## COUNT II - NEGLIGENCE

61.     Thakkar re-alleges Paragraphs 1 through 54 as if fully set forth in this Count.

62.     Defendants and their agents owed a duty to Thakkar to act reasonably during their property inspection and preservation activities. The duty owed to Thakkar included the obligation to obtain lawful authority to enter the premises, to give notice to the Plaintiff prior to entering the premises, to reasonably determine whether the premises had been abandoned by Thakkar, investigating and correcting any potential wrongful actions or wrongful foreclosure committed by its agents, servants, employees, and/or contractors, and to conduct its property preservation activities in a reasonable and prudent manner and without wrongfully and unlawfully damaging Thakkar and depriving him of his possessions.

11

63.     Defendants breached their duties to Thakkar by recklessly or negligently entering onto the Subject Property without prior notice to Thakkar and without lawful judicial process, and by unlawfully dispossessing Thakkar his personal property in violation of his rights. Defendants also failed to remedy this breach after the gross misconduct was brought to its attention.

64.     At all times material herein, Defendants exercised control over the actions and conduct of its agents engaged in the aforesaid conduct.

65.     The conduct of Defendants directly and proximately caused Plaintiff to be damaged.

WHEREFORE, Plaintiff requests that he be awarded damages against Defendants in an amount to be proven at trial along with punitive damages, attorneys fees, costs, expenses and any other just relief to be determined by the Court.

## COUNT III – TRESPASS
### (In the alternative to Count II)

66.     Thakkar re-alleges Paragraphs 1 through 54 as if fully set forth in this Count.

67.     Defendants, their agents, contractors and/or employees entered onto the Subject Property without Thakkar's permission or authorization.

68.     The actions of Defendant and its agents, contractors and/or employees were done recklessly and/or with gross disregard for Thakkar's rights.

69.     At all times material herein, Defendants exercised control over the actions and conduct of their agents.

70.     Thakkar suffered damages as a direct result of the actions of Defendants, their agents, contractors and/or employees.

12

2015L000713

WHEREFORE, Plaintiff requests that she be awarded damages against Defendant in an amount to be proven at trial along with punitive damages, attorney's fees, costs, expenses and any other just relief to be determined by the Court.

## COUNT IV – CONVERSION
(In the alternative to Count II)

71.     Thakkar re-alleges Paragraphs 1 through 54 as if fully set forth in this Count.

72.     Defendants, their agents, contractors and/or employees entered onto and into the Subject Property without Thakkar's permission or authorization.

73.     At all times material herein, Thakkar had personal property within the Subject Property and had an absolute and unconditional right to the immediate possession of such personal property.

74.     Defendants, their agents, contractors, and/or employees wrongfully and without authorization from Thakkar seized his personal property from the Subject Property and assumed dominion, ownership and control over his personal property.

75.     Defendants also unlawfully locked Thakkar out of the Subject Property and prevented him from his right to possession of the home or the personal property therein.

76.     Despite Thakkar's demands, his property has not been returned.

77.     At all times material herein, Defendants exercised control over their agents who were engaged in the aforesaid conduct.

78.     The actions of Defendants and their agents, contractors and/or employees were done recklessly and/or with gross disregard for the Thakkar's rights.

79.     Thakkar was damaged as a direct result of the actions of Defendants, their agents, contractors, and/or employees.

13

WHEREFORE, Plaintiff requests that he be awarded damages against Defendants in an amount to be proven at trial along with punitive damages, attorneys fees, costs, expenses and any other just relief to be determined by the Court.

**COUNT V – INVASION OF PRIVACY**
(In the alternative to Count II)

80.     Thakkar re-alleges Paragraphs 1 through 54 as if fully set forth in this Count.

81.     Defendants, their agents, contractors, and/or employees, seized Thakkar's property and possessions without permission or authorization. Defendants, their agents, contractors and/or employees deprived Thakkar of access to his own home by locking him out and rekeying the doors. Defendants, their agents, contractors, and/or employees had no right or authority to break into Thakkar's home, seize his property, and remove or dispose of his personal property and possessions.

82.     The actions of Defendants and their agents, contractors and/or employees were done recklessly and/or with gross disregard for Thakkar's rights.

83.     At all times material herein, Defendants exercised control over the actions and conduct of its agents who engaged in this conduct.

84.     The acts of Defendants, their agents, contractors, and/or employees were such that a reasonable person would find them to be a substantial and serious interference in Thakkar's privacy.

85.     At all times material herein, Thakkar was the lawful occupant of the Subject Property and had a right to privacy therein. Thakkar had the right to be free from unlawful intrusion into his home and a right to be free from the unauthorized seizure and destruction of his property. Although Thakkar was not present in the Subject Property at the time of Defendants' conduct as aforesaid,

14

2015L000713

Thakkar had personal possessions and private papers containing personal information in the premises.

WHEREFORE Plaintiff requests that he be awarded damages against Defendants in an amount to be proven at trial along with punitive damages, attorney's fees, costs, expenses and any other just relief to be determined by the Court.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that this Honorable Court enter an Order:

A.      Finding that in the course of trade or commerce, Defendants engaged in unfair and deceptive acts or practices within the meaning of Section 2 of the Consumer Fraud Act by, but not limited to, the unlawful acts and practices alleged in this Complaint;

B.      Awarding damages to Plaintiff and against Defendants in an amount to be proven at trial, including but not limited to actual and punitive damages;

C.      Requiring Defendants to pay all costs for the prosecution and investigation of this action, including but not limited to expenses and attorney's fees; and

D.      Providing such equitable and other relief as justice may require.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts so triable.

Dated:   10/6/2015                                    By: _____
                                                              One of Plaintiff's Attorneys

Stephen Sotelo
The Law Firm of Thomas J. Homer P.C.
200 E. 5th Avenue, Suite 123
Naperville, IL 60563
Ph: 630-428-3311
Fx: 630-428-3344
ssotelo@homerlawoffices.com

15

2015L000713

## VERIFICATION

Under penalties as provided by law pursuant to §1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____

Nirav Thakkar

16