**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| NIRAV THAKKAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-CV-10109 |
| | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | Judge John J. Tharp, Jr. |
| ALTISOURCE SOLUTIONS, INC., | ) | |
| ALTISOURCE PORTFOLIO | ) | |
| SOLUTIONS, S.A., BAXOL | ) | |
| PROPERTIES, LLC, and LAUDAN | ) | |
| PROPERTIES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nirav Thakkar has sued his mortgage servicer and several companies associated with so-called "property preservation services" after his home was twice broken into and ransacked by agents carrying out orders to "secure" the property for foreclosure proceedings, despite the fact that Thakkar was current on the mortgage and was occupying the home. Thakkar asserts a variety of state law claims[1] against the various defendants, two of which (BaXol Properties, LLC, and Altisource Portfolio Solutions, S.A.) have moved to dismiss. In addition, several of the property preservation services companies have filed third party complaints against Green Group Corporation, the company that did the "on the ground" work. Green Group has moved for a more definite statement of these claims. For the reasons stated below, BaXol's motion to dismiss is denied, Altisource Portfolio Solutions' motion is granted without prejudice, and Green Group's motion is denied.

---

[1] Jurisdiction is based on diversity. Thakkar is a citizen of Illinois, all of the defendants are alleged to be citizens of other states, and Thakkar plausibly claims damages in excess of $75,000.

## BACKGROUND[2]

The facts alleged in this case are relatively simple, but disturbing. Plaintiff Nirav Thakkar alleges that the defendants twice broke into his home, changed the locks, and took his personal property, all in preparation for a mortgage foreclosure proceeding that was entirely unwarranted. Thakkar is an Illinois resident who lived from 2007 to January 2014 at 311 Danbury Drive in Naperville, Illinois. *Id*. at ¶ 15. Thakkar's uncle bought the property in 2006 using a mortgage with the intention that Thakkar would live there. *Id*. at ¶ 63. Thakkar "leased" the home from his uncle from 2007 until December 2013 by making all payments on the home's mortgage and paying the utilities. *Id*. at ¶ 64. On December 23, 2013, Thakkar purchased the property and remains the legal owner today.[3] *Id*. at ¶ 65.

From 2006 to January 2013, the mortgage on Thakkar's home was serviced by GMAC. Compl. ¶ 67. On February 7, 2013, defendant Ocwen Loan Servicing, LLC ("Ocwen") notified Thakkar that Ocwen would be servicing the mortgage effective February 16, 2013. *Id*. at ¶ 69. At the time, Thakkar had made all the required monthly mortgage payments without incident and was current on the mortgage. *Id*. at ¶¶ 67, 70. Immediately after the transfer to Ocwen, however, Ocwen began sending "statement and demand letters" regarding "late" payments. *Id*. at ¶ 71.

---

[2] The Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. Deb v. Sirva, Inc., 832 F.3d 800, 810 (7th Cir. 2016). The Court may also consider facts alleged by a plaintiff in a brief in opposition to a motion to dismiss, as long as they are consistent with the allegations in the complaint. Smith v. Dart, 803 F.3d 304, 311 (7th Cir. 2015).

[3] According to the complaint, Thakkar's mortgage servicer at the time (Ocwen) recognized that he paid off the mortgage and filed a release of mortgage with the Will County Recorder of Deeds in late 2013. *See* Compl. ¶ 103.

Ocwen also began billing Thakkar for "property preservation services" assessed by defendant Altisource.[4] *Id*. at ¶ 72.

Throughout 2013, Thakkar "regularly" called Ocwen to dispute the charges and the allegations that he was late or in default to no avail. Compl. ¶ 73. Ocwen, however, claimed it did not have a record of his past payments to GMAC and insisted he was in default. *Id*. Thakkar sent Ocwen proof of his past mortgage payments, but Ocwen refused to correct the account. *Id*. at ¶ 74. In September 2013, Ocwen declared the mortgage more than 45 days delinquent and referred the home for "property preservation." *Id*. at ¶ 77.

This is where the chain of other defendants comes in. The property preservation request was automatically sent to Altisource through an electronic system.[5] Compl. ¶ 52. On September 5, 2013, Altisource issued a work order to defendant Laudan Properties, LLC ("Laudan") for an "exterior inspection and occupancy determination." *Id.* at ¶ 78. Ocwen did not tell Thakkar about this work order or ask whether he was living in the property. *Id*. at ¶ 79. On September 14, 2013, Laudan completed the inspection and reported that although the utility meters were active, it considered the property vacant. *Id*. at ¶ 80. When this determination was added to the electronic system, a "series of additional pre-foreclosure work orders were automatically assigned to" defendant BaXol Properties, LLC ("BaXol"). *Id.* at ¶ 82. These work orders included changing the locks, shutting off utilities, inspecting the interior, and removing property. *Id*. No party

---

[4] Two Altisource entities are named in the complaint, but the complaint merely refers to "Altisource" during the narrative. Defendant Altisource Solutions, Inc. is a "wholly owned subsidiary of Altisource Portfolio Solutions S.A.," which has over fifty subsidiaries around the world. *See* Compl. ¶ 20.

[5] Thakkar's complaint provides detailed allegations regarding Ocwen's use of Altisource's "Vendor Management Services" software and how various referrals are automatically generated in that system. It also discusses the contracts and agency agreements between the parties. The Court will discuss these later to the extent they are relevant.

sought a court order. *Id*. BaXol was "contractually required to facilitate completion of the work orders" and assigned the orders to Green Group Corporation ("Green Group"). *Id*. at ¶ 83-84.

On October 7 or 8, 2013, Green Group performed the work it had been hired to do – it broke in and entered the property, changed the locks, conducted an interior inspection, shut off utilities, and removed Thakkar's property. Compl. ¶ 88. Green Group took a number of pictures to document its work, which were uploaded to the electronic system. *Id*. at ¶ 89-90. The pictures showed many rooms were neat and well-maintained and at the end the rooms had been "ransacked and rummaged through." *Id*. at ¶ 89. Thakkar returned home to find his personal property "thrown throughout the house" and called the police. *Id*. at ¶ 91. He reported over $20,000 in missing property to the police, including "cash, financial documents, watches, electronics, sports jerseys, and a memory card with Thakkar's family photographs" as well as other personal effects. *Id*. at ¶ 92. Thakkar's prescription medication was also taken, forcing him to be without medication for "several weeks," while food, cleaning supplies, and toiletries had also been taken. *Id.* at ¶ 93. The water and water heater had also been turned off. *Id*. at ¶ 94. Thakkar stayed with his parents for several days afterwards because he did not know who had ransacked his home and feared for his safety. *Id*. at ¶ 95.

Several days later, Thakkar found a "posting" outside his home listing a phone number for Altisource, which he called and was directed to Ocwen. Compl. ¶ 96. Ocwen confirmed over the phone that it was responsible for the break-in and that it was a mistake. *Id.* at ¶ 97. Ocwen offered to teach Thakkar how to turn his utilities back on or send Altisource to turn them on. *Id*. Thakkar opted for the later, and about a week later Altisource sent a vendor to turn on the water and water heater. *Id*. at ¶ 98. Thakkar discovered the water heater had been broken and anti-freeze had been poured into the pipes and plumbing, necessitating several hundred dollars in

repair costs. *Id*. Thakkar demanded his damaged property be repaired and the removed property be returned, but Ocwen and Altisource both refused. *Id*. at ¶ 99.

Even though Thakkar had paid off the mortgage on the property in December 2013 and Ocwen had released the mortgage with county officials, Altisource (on behalf of Ocwen) issued a work order to Laudan again for an inspection and vacancy determination in January 2014. Compl. ¶ 105. Laudan again identified the property as vacant, BaXol was again assigned an identical roster of tasks, which it assigned to Green Group. *Id.*. at ¶ 106-8. Green Group again forcibly changed the locks, entered the property, inspected it, and removed Thakkar's personal property. *Id*. at ¶ 109. Thakkar again called the police, and reported approximately $75,000 in lost property, ranging from sports memorabilia to furniture. *Id*. at ¶ 111. The next day, Ocwen told Thakkar how to access the new keys and told him to call Altisource. *Id*. at ¶ 113. Altisource falsely denied having any record of the property. *Id*. at ¶ 114. Thakkar demanded that Ocwen and Altisource repair and return his property to no avail. *Id*. at ¶ 115. Thakkar became so fearful for his safety after the second break-in that he moved out and began leasing the property to renters. *Id*. at ¶ 116. At no point in the process did any party obtain Thakkar's consent, initiate foreclosure proceedings, or obtain a court order authorizing any of the actions taken. *Id*. at ¶ 117.

Thakkar sued Ocwen and Altisource in Illinois state court in 2015. The defendants removed to federal court on the basis of diversity jurisdiction and, following discovery, Thakkar filed an amended complaint naming further defendants. The amended complaint contains counts for violation of the Illinois Consumer Fraud and Deceptive Business Practice Act, negligence, trespass to property and chattels, conversion, invasion of privacy, and civil conspiracy. Several defendants filed third party complaints against Green Group for contribution under the Illinois Joint Tortfeasor Contribution Act. BaXol and Altisource Portfolio Solutions, S.A., have moved

to dismiss Thakkar's amended complaint. Green Group has moved for a more definite statement as to the third party complaints of Ocwen and Altisource Solutions, Inc.

## DISCUSSION

Before the Court are three motions: BaXol's motion to dismiss Thakkar's first amended complaint for failure to state a claim, Altisource Portfolio Solutions' motion to quash service or dismiss Thakkar's complaint for lack of personal jurisdiction or failure to state a claim, and Green Group's motion for a more definite statement as to the third party complaints of Altisource Solutions, Inc. and Ocwen.

As discussed above, the Court assumes the truth of the facts alleged in Thakkar's complaint unless they are contradicted by evidence (such as affidavits) submitted by the defendant. *Deb v. Sirva, Inc.*, 832 F.3d 800, 808-09 (7th Cir. 2016). To survive a motion to dismiss, a plaintiff must "state a claim for relief that is legally sound and plausible on its face." *Id*. at 810. This involves pleading enough facts that it raises the prospect of a right to relief above the speculative level. *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015).

### I. BaXol's Motion to Dismiss

BaXol has moved to dismiss the entirety of the complaint against it. BaXol's primary argument (although it varies in specifics from count to count) is that Thakkar cannot bring his claims against BaXol because BaXol did not have any relationship with Thakkar and never interacted with the physical or real property at issue. Thakkar counters that BaXol ordered its agent (Green Group) to do the actions alleged in the complaint, rendering it liable for those actions even if BaXol never physically came in contact with the property. The Court addresses this argument first, followed by the allegations concerning the individual counts.

## A. Sufficiency of the Agency Allegations

According to the complaint, BaXol is Altisource's "primary vendor" for property preservation services in Illinois. Compl. ¶ 41. Ocwen, the loan servicer, automatically requests these services from Altisource when a property is marked as vacant by a different Altisource contractor. *Id*. at ¶ 45. BaXol does not physically perform property preservation services. *Id*. at ¶ 47. Rather, it subcontracts the work to one of its vendors who work in designated geographic areas. *Id*. Green Group was ordered by BaXol to perform the "services" involved here – changing the locks, shutting off utilities, and removing property – on both occasions. *Id*. at ¶ 49. Thakkar further alleges that BaXol has a "form" contract with its subcontractors, including Green Group, which requires them to perform the work "at BaXol's demand without discretion." *Id*. at ¶ 55. BaXol attached a page of a contract to its motion to dismiss, but the document appears to be a page from its contract with Altisource, not with Green Group. *See* Def.'s Ex. A, ECF No. 129-1.

Agency may be actual or apparent, express or implied, and is based on the "words or conduct of the alleged principal." *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000). Agency is determined by "whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 895 (N.D. Ill. 2009). The existence and scope of an agency relationship are questions of fact. *Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1024 (N.D. Ill. 2008). As long as the plaintiff has alleged the elements of an agency relationship, such as an agreement and how that agreement operated, the plaintiff can be considered to have sufficiently pled an agency relationship. *See, e.g., Cumis Ins. Soc'y v. Peters*, 983 F. Supp. 787,

796 (N.D. Ill. 1997); *Whitley*, 607 F. Supp. 2d at 895-96. BaXol suggests that its subcontractors are independent contractors, meaning that the subcontractors "produce a given result but, in the actual execution of the work, is not under the order or control of the person for whom he does the work." *Sperl v. C.H. Robinson Worldwide, Inc.*, 946 N.E.2d 463, 470 (Ill. App. Ct. 2011). Again, however, whether a party is an agent or an independent contractor is a factual matter. *Horton v. Chicago*, No. 13-CV-6865, 2016 WL 4945014, at *8 (N.D. Ill. Sept. 15, 2016).

According to the complaint, BaXol used a "form" contract with its subcontractors where the work is performed "without discretion." Compl. ¶ 55. This includes performing the work "within specific time frames," without asking questions, and complying with "specific orders." *Id*. at ¶ 53. After the work is completed, the subcontractor must provide BaXol with a number of documents, including reports and pictures of the work. *Id*. at ¶ 49. The Court finds that the allegations of contract, that work be performed without discretion according to the work order's specifications, and upload pictures upon completion plausibly state an agency relationship where BaXol controlled the manner and method by which the work was completed.[6] Having determined that Thakkar has plausibly alleged an agency relationship between BaXol and Green Group, the Court addresses each of BaXol's objections to the substantive counts.

### B. ICFA Claim

BaXol raises two arguments regarding Thakkar's claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 510/2. First, BaXol alleges that

---

[6] BaXol briefly argues that any theft of Thakkar's possessions by Green Group would be outside the scope of employment. The complaint, however, alleges that BaXol instructed Green Group to, among other things, remove Thakkar's personal property. This plausibly brings the removal (which Thakkar contends amounted to theft) plausibly within the scope of BaXol's orders.

Thakkar lacks standing to bring an ICFA claim. Second, it alleges Thakkar has failed to properly plead a substantive ICFA claim (with sufficient particularity or with the necessary elements).

BaXol first alleges that only "consumers" and businesses can bring ICFA claims. BaXol reasons that Thakkar, because he never bought a product directly from BaXol and was not the holder of the mortgage on the property, cannot establish that he is a "consumer" protected by the ICFA. The ICFA, however, plainly does not require any sort of contractual relation between the parties. The statute clearly states that "[a]ny person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person." 815 ILCS 505/10a(a). The definition of "person" includes both individuals and commercial entities. 815 ILCS 510/1(5). Thakkar has plainly suffered damages caused by the conduct he alleges violates the act (and he has plausibly alleged that conduct was caused by Green Group working as an agent for BaXol), so Thakkar has standing.

The second question is whether Thakkar has stated an ICFA claim. Initially, BaXol contends that Thakkar has failed to comply with Rule 9(b)'s particularity requirement for fraud. An ICFA claim, however, may be based on unfairness rather than fraud and Thakkar's claim does not sound in fraud. "An ICFA claim for unfairness need not meet the pleading standards of Rule 9(b)." *Fed. Nat'l Mortg. Ass'n v. Obradovich*, No. 14-CV-04664, 2016 WL 1213920, at *3 (N.D. Ill. Mar. 29, 2016). In any event, Thakkar does plead the "who, what, when, where, and how" that Rule 9(b) requires. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). He explains in detail the series of events that resulted in his home being ransacked by Green Group and what that conduct entailed. Thus, the claim is pled with sufficient particularity.

An ICFA unfairness claim has three elements: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair

practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012). Contrary to BaXol's representations, "[i]ntent to deceive is not required unless the claim is for fraud." *Sultan v. M&T Bank*, No. 16-CV-08767, 2017 WL 1304103, at *4 (N.D. Ill. Apr. 7, 2017). Thakkar has alleged that the defendants "intended Thakkar to rely upon their actions and to buffalo and bully Thakkar into giving up his possessory rights" in his home. Compl. ¶ 141. Thakkar further alleges the conduct is a part of the defendants' "business models." *Id*. at ¶ 135. He further alleges that it was unfair to change the locks and take his property without authority from an Illinois court. *Id*. at ¶ 130. As these actions are plausibly attributable to BaXol due to its agency relationship with Green Group, the motion to dismiss is denied as to the ICFA claim.

## C. Negligence Claim

BaXol next argues that Thakkar's negligence claim should be dismissed because it did not owe him a duty. BaXol argues again that it had no contacts with Thakkar directly and points to its contract with Altisource Solutions that the agreement "does not create any rights, claims or benefits inuring to any person or entity. . . that is not a party to this Agreement, nor does it create or establish any third party beneficiary to this Agreement." Def.'s Mem. at 7, ECF No. 129. BaXol fundamentally misunderstands Thakkar's claim when it cites to the rule that an "allegation of negligence based upon a contractual obligation, although sounding in tort rather than contract, is nonetheless defined by the contract." *Eichengreen v. Rollins, Inc.*, 757 N.E.2d 952, 959 (Ill. App. Ct. 2001). Thakkar alleges that BaXol was negligent in "contributing to and enabling the destruction of [Thakkar's] real and personal property" by negligently determining that the property was vacant and its subsequent instructions to Green Group. Compl. ¶ 150-51. This does not necessarily imply that Thakkar is arguing that BaXol negligently performed its

contract with Altisource. Rather, he is arguing that BaXol was negligent to perform the contract at all in light of the circumstances. And to the extent Thakkar is arguing BaXol was negligent based upon a contract, it is the contract BaXol made with Green Group rather than its contract with Altisource that would matter.

Furthermore, BaXol owed Thakkar a duty of ordinary care to guard "against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons." *Jackson v. Bank of N.Y.*, 62 F. Supp. 3d 802, 819 (N.D. Ill. 2014). Here, it is plausible to assert that BaXol breached a duty of ordinary care by, for example, sending Green Group to Thakkar's home a second time after photos relayed to it indicated Thakkar's home was inhabited and not vacant. Thus, the motion to dismiss is denied as to the negligence claim.

### D. Trespass to Real Property and Chattels

BaXol first contends that Count III, which alleges trespass to real property and chattels, is "vague" and they construe it to be only a claim for trespass to chattels. The Court reads Count III to assert claims for both conventional trespass to real property and trespass to chattels, which are valid claims in tort under Illinois law. *See Matthews v. Homecoming Fin. Network*, No. 03 C 3115, 2005 WL 2387688, at *8 (N.D. Ill. Sept. 26, 2005). BaXol having advanced no other argument as to the trespass to real property claim, that claim survives the motion to dismiss.

As to the trespass to chattels claim, BaXol argues that Thakkar has failed to allege "any intentional act in which BaXol" trespassed upon Thakkar's property. Def.'s Mem. at 7. "A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Sotelo v.*

*DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1229 (N.D. Ill. 2005). BaXol's theory relies primarily on the idea that Green Group's actions are not attributable to BaXol, which this Court has already rejected. As Thakkar states, he has alleged that BaXol intentionally broke into his home and removed his possessions through the actions of its agent, Green Group. *See* Pl.'s Resp. at 10, ECF No. 174. Therefore, the motion to dismiss is denied as to the trespass claim.

### E. Conversion Claim

BaXol objects to the conversion claim on the grounds that Thakkar "fails to allege that BaXol assumed control, dominion, or ownership over any of his property" directly. Def.'s Mem. at 8. Conversion, however, can be accomplished through an agent. *See Fortech, L.L.C. v. R.W. Dunteman Co.*, 852 N.E.2d 451, 456 (Ill. App. Ct. 2006). Green Group undoubtedly assumed control and dominion over Thakkar's property when it removed the property from Thakkar's home at BaXol's direction. Therefore, the motion to dismiss the conversion count is denied.

### F. Invasion of Privacy

The only ground BaXol raises regarding the invasion of privacy claim is that Thakkar failed to allege that BaXol committed "any intentional act" because it did not come into contact with Thakkar's property directly. This ground fails for the same reason the conversion claim fails – assuming there is an agency relationship, Thakkar has alleged sufficient intentional acts even if BaXol never personally touched his property or came into his home. *Cf. Bank of Indiana v. Tremunde*, 365 N.E.2d 295, 298 (Ill. App. Ct. 1977) (contemplating invasion of privacy claim premised on actions of bank's agents). In its reply, BaXol further argues that Thakkar has failed to plead that the intrusion, as opposed to the loss of property, caused him "anguish and suffering" as required. *See Jackson v. Bank of N.Y.,* 62 F. Supp. 3d 802, 817 (N.D. Ill. 2014). Thakkar, however, became aware of the intrusion immediately upon returning home and felt so unsafe as a

result that he stayed with his parents and eventually moved out of the property altogether. This fear of future invasions is sufficient suffering to state a claim. The motion to dismiss the invasion of privacy claim is denied.

### G. Civil Conspiracy

"Under Illinois law, a civil conspiracy is defined as: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 782 (N.D. Ill. 2008) (internal quotation marks omitted). BaXol argues that Thakkar has failed to allege "any tortious act committee by BaXol in furtherance of a scheme" or that BaXol "knowingly and voluntarily participated in a common scheme." Def.'s Mem. at 10. The first contention can be dismissed immediately as only one of the conspirators must have committed a tortious or unlawful act. The allegations of the complaint clearly include tortious acts by several members of the conspiracy. The question, then, is whether BaXol is sufficiently alleged to have joined the conspiracy.

Thakkar alleges that all the defendants entered into "express agreements" which "call for Defendants to ignore the possessory rights of homeowners in violation of the law." Compl. ¶ 177-79. Thakkar then explicitly alleges that all the defendants "knowingly and voluntarily participate[d] in a common scheme." *Id.* at ¶ 182. The complaint clearly contemplates a scheme in which the defendants knowingly take part in a contractual scheme intended to force homeowners out of their homes without judicial process and that BaXol was a knowing and voluntary participant. Allegations of business relationships that involve tortious conduct are sufficient for a civil conspiracy claim at the pleadings stage. *See Matthews v. Homecoming Fin.*

*Network,* No. 03 C 3115, 2005 WL 2387688, at *6 (N.D. Ill. Sept. 26, 2005); *Redelmann v. Claire Sprayway, Inc.*, 874 N.E.2d 230, 243 (Ill. App. Ct. 2007) (allegation that defendants "entered into a common scheme and agreement" sufficient). And, in view of the facts alleged— which if true would support an argument that BaXol and other defendants disregarded obvious indications that the home was not vacant—it is plausible to infer that the conduct at issue reflected an intentional course of conduct designed to constructively evict Thakkar from his residence. Thus, the motion to dismiss the civil conspiracy claim is also denied.

**II. Altisource Portfolio Solutions' Motion to Dismiss**

Altisource Portfolio Solutions, S.A. ("APS"), originally moved to dismiss Thakkar's complaint on three grounds: that it had not been served in compliance with the Hague Convention, that it was not subject to personal jurisdiction in Illinois, and that the complaint failed to provide the factual detail necessary to understand the claims against it. Thakkar attached to his response the proof of service and copies of the summons which complied with the Hague Convention, and APS does not appear to contest that proof. Thakkar does not dispute that the current complaint's allegations are insufficient but requests that the dismissal be without prejudice rather than with prejudice.

The operative complaint is the first to name APS as a defendant and Thakkar suggests that he has evidence that several American subsidiaries are "mere agents and/or shells" of APS. *See* Pl.'s Resp. at 2, ECF No. 171. Allegations premised on that evidence could potentially solve the personal jurisdiction and factual detail problems. Courts in this district generally allow a plaintiff at least once chance to amend if the amendment is not futile. *See Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 761 (N.D. Ill. 2015). Thus, APS's motion to dismiss is granted without

prejudice, although the Court reminds Thakkar that any amendment must be in good faith and reflect serious consideration of the evidence attached to APS's motion to dismiss.

### III. Green Group's Motions for a More Definite Statement

In response to Ocwen and Altisource Solutions, Inc.'s third party complaints for contribution, Green Group has filed a motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e), which allows a motion in lieu of answer when a complaint is "so vague or ambiguous that the party cannot reasonably prepare a response." Rule 12(e) motions are "generally disfavored." *Direct Commc'ns, Inc. v. Horizon Retail Constr., Inc.*, 387 F. Supp. 2d 828, 833 (N.D. Ill. 2005). Such a motion will only be granted "if the complaint is so unintelligible that the defendant cannot draft responsive pleading." *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915 (N.D. Ill. 2016). Green Group raises two arguments in its motion – that intentional tortfeasors do not have a right to contribution and that punitive damages are not subject to contribution. What should be immediately clear is that these are arguments that Green Group does not legally owe any contribution, not that the third party complaints are unintelligible, vague, or ambiguous. *See* Bradley Scott Shannon, *I Have Federal Pleading All Figured Out*, 61 CASE W. RES. L. REV. 453, 466 (2010) ("It is possible for a complaint to be sufficient for the purpose of framing a responsive pleading and yet fail to state a claim upon which relief can be granted.").

But, Green Group argues, it cannot tell for which of the six causes of action or damages claims *from Thakkar's underlying complaint* the third party plaintiffs are seeking contribution.[7] This doesn't matter because Green Group is only required to respond to the allegations in the

---

[7] The Court notes that this contention flies in the face of the requirement that legal theories need not be pled in complaint. *King v. Kramer*, 763 F.3d 635, 642 (7th Cir. 2014)). If a complaint need not even plead legal theories, it cannot be that a contribution complaint is legally vague for failing to identify specific legal theories that might give rise to contribution liability.

***third party complaints***. Those allegations merely assert that Green Group had a duty to exercise reasonable care and that, if the Plaintiff is successful in proving his allegations, Green Group would be liable for negligence in providing the property preservation services in one or more listed ways. *See* Altisource Solutions Third Party Compl. ¶ 12-13, ECF No. 117. Thus, the third party plaintiffs request contribution in any amount that Green Group's negligence contributed to any damages. *Id.* at ¶ 15.

Rule 12(e) motions are not a substitute for discovery or, in the case of complaints for contribution, an adjudication of the underlying claims. *See United States for Use of Argyle Cut Stone Co. v. Paschen Contractors, Inc.*, 664 F. Supp. 298, 303 (N.D. Ill. 1987). Green Group's arguments go to whether or not the third party complaints are meritorious, not whether they are sufficiently clear to enable a response. Green Group could, for example, deny that it was negligent or that it would be liable for certain types of damages. Depending on which of Thakkar's claims, if any, are successful, Green Group may or may not be able to assert its theories that it is exempt from punitive and intentional damages awards.[8] But a Rule 12(e) motions is not the place to make those arguments. The motion for a more definite statement is therefore denied.

\*      \*      \*

---

[8] For example, Thakkar brings a common law negligence claim – the very sort of claim where contribution was *allowed* in *Ziarko v. Soo Line Railroad. See Ziarko v. Soo Line R.R.,* 161 Ill. 2d 267, 268, 641 N.E.2d 402, 403 (Ill. Sup. Ct. 1994).

For the reasons set forth above, Thakkar has sufficiently state his claims against BaXol. BaXol's motion to dismiss is therefore denied. Thakkar admits his claims, including for personal jurisdiction, are insufficient against APS and requests the Court dismiss those claims without prejudice. Therefore, the Court grants APS's motion to dismiss without prejudice. Because the third party complaints are not so vague as to prevent a response, Green Group's motion for a more definite statement is denied.

Dated: September 6, 2017

John J. Tharp, Jr.
United States District Judge