**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NIRAV THAKKAR, an individual, | |
| Plaintiff, | Case No. 1:15-cv-10109 |
| v. | |
| OCWEN LOAN SERVICING, LLC, a Delaware limited liability company; ALTISOURCE SOLUTIONS, INC., a Delaware corporation; ALTISOURCE PORTFOLIO SOLUTIONS, S.A., a Luxembourg corporation; BAXOL PROPERTIES, LLC, an Indiana limited liability company; and LAUDAN PROPERTIES, LLC, an Ohio limited liability company, | Honorable John J. Tharp, Jr. <br><br> Magistrate Judge Maria Valdez |
| Defendants. | |
| OCWEN LOAN SERVICING, LLC, | |
| Defendant/Cross Claimant, | |
| v. | |
| BAXOL PROPERTIES, LLC, an Indiana limited liability company; and LAUDAN PROPERTIES, LLC, an Ohio limited liability company, | |
| Defendants/Cross Defendants. | |
| OCWEN LOAN SERVICING, LLC, | |
| Third-Party Plaintiff, | |
| v. | |
| GREEN GROUP CORP., an Illinois corporation, | |
| Third-Party Defendant. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**OCWEN'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

STANDARD OF REVIEW .................................................................................................. 2

RESPONSE TO OCWEN'S "FACTS" ............................................................................. 3

ARGUMENT ........................................................................................................................ 3

I.     OCWEN IS LIABLE FOR THE ACTIONS OF ALTISOURCE, BAXOL,
LAUDAN AND GREEN GROUP ................................................................................... 3

II.    THAKKAR'S CLAIMS AGAINST OCWEN DO NOT FAIL AS A MATTER
OF LAW INDEPENDENTLY ......................................................................................... 8

    A.    Thakkar's ICFA Claim Does Not Fail as a Matter of Law ................................... 8

        i.   Ocwen Engaged in Unfair or Deceptive Conduct .............................................. 8

        ii.  Thakkar's Damages are Proximately Caused by Ocwen................................ 12

    B.    Thakkar's Claim for Negligence Does Not Fail .................................................. 14

    C.    Thakkar's Claim for Trespass Does Not Fail ..................................................... 16

    D.    Thakkar's Claim for Conversion Does Not Fail.................................................. 18

    E.    Thakkar's Claim for Invasion of Privacy Does Not Fail..................................... 19

    F.    Thakkar's Claim for Civil Conspiracy Does Not Fail.......................................... 20

    G.    The Questions of Punitive Damages Should Go to the Jury ................................ 24

CONCLUSION .................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aguirre v. Turner Constr. Co.*, 501 F.3d 825, 829 (7th Cir. 2007) ............................................7, 8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)........................................................2

*Barton v. Chi. & N. W. Transp. Co.*, 757 N.E.2d 533, 555 (Ill. App. 1st Dist. 2001)..................24

*Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) ..........................................................13

*Boyd v. U.S. Bank, N.A.*, 787 F. Supp. 2d 747, 755 (N.D. Ill. 2011) ................8, 9, 10, 13, 21, 22

*Cebulske v. Johnson & Johnson*, 2015 U.S. Dist. LEXIS 33042,
    at \*10-11 (S.D. Ill. 2015).......................................................................................................4

*Cirrincione v. Johnson*, 184 Ill. 2d 109 (Ill. 1998)........................................................................24

*City of Evanston v. Texaco, Inc.*, 19 F. Supp. 3d 817, 828 (N.D. Ill. 2014).................................24

*Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018)............................................................14

*First Nat'l Bank v. Amco Eng'g Co.*, 335 N.E.2d 591, 594 (Ill. 1975) ...................................19, 24

*Frazier v. US Bank Nat'l Ass'n*, 2013 U.S. Dist. LEXIS 45330,
    at \*5 (N.D. Ill. 2013) ...............................................................................................9, 10, 13, 21

*Hammer v. RCS, Inc.*, 2015 U.S. Dist. LEXIS 162636, \*75 (N.D. Ill. 2015) ..............................24

*Jackson v. Bank of New York*, 62 F. Supp. 3d 802, 813
    (N.D. Ill. 2014) ..............................................................................4, 6, 7, 11, 12, 13, 16, 17

*Janda v. Kwiatkowski*, 2007 U.S. Dist. LEXIS 5427, at \*15 (N.D. Ill. 2007) ...............................3

*Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)..................................................14, 23

*Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 425, 430 (2012)............................5, 6, 19, 20, 25

*Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 349 (7th Cir. 2015).....................11

*Lilly Indus. v. Health-Chem Corp.*, 974 F. Supp. 702, 708 (S.D. Ind. 1997).................................4

*Loukas v. Clear Channel Outdoor, Inc.*, 2013 U.S. Dist. LEXIS 180635,
    at \*4 (N.D. Ill. 2013) .............................................................................................................4

*Lovgren v. Citizens First Nat'l Bank of Princeton,* 126 Ill.2d 411, 417 (1989).....................19, 20

*Melvin v. Burling*, 141 Ill. App. 3d 786, 789 (1986) ...................................................... 20

*Mills v. First Fed. S & L Ass'n*, 83 F.3d 833, 840 (7th Cir. 1996) .................................. 3

*Moorehead v. Mustang Constr. Co.*, 821 N.E.2d 358, 360 (2004) ................................... 8

*Mopex, Inc. v. Chi. Stock Exch.*, 2003 U.S. Dist. LEXIS 2807,
    at *12 (N.D. Ill. 2003) ............................................................................................... 14

*Motherway, Glenn & Nepleton v. Tehin*, 2003 U.S. Dist. LEXIS 10928,
    at *15-16 (N.D. Ill. 2003) ......................................................................................... 24

*Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. Ill. 2017) ................ 24

*Reynolds v. Henderson & Lyman*, 903 F.3d 693, 697 (7th Cir. 2018) ........................... 15

*Rodrian v. Seiber*, 551 N.E.2d 772, 775 (Ill. App. 1990) .............................................. 24

*Sak v. Citimortgage, Inc.*, 940 F. Supp. 2d 802 (N.D. Ill. 2013) ................................... 17

*Sarno v. Thermen*, 608 N.E.2d 11 (1992) ..................................................................... 25

*TNT Logistics N. Am., Inc. v. Bailly Ridge TNT, LLC*,
    2006 U.S. Dist. LEXIS 73316, at *24 (N.D. Ill. 2006) ............................................ 16

*U.S. ex rel. Lisitza v. Par Pharm. Cos.*, 276 F. Supp. 3d 779, 808 (N.D. Ill. 2017) ............... 14, 23

*Vulcan Golf, LLC v. Google, Inc.*, 552 F. Supp. 2d 752, 782 (N.D. Ill. 2008) ............................ 21

*Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir. 1985) ..................................................... 3

*Wendorf v. Landers*, 755 F. Supp. 2d 972, 981 (N.D. Ill. 2010) ................................... 24

## Statutes

Illinois Consumer Fraud Act ....................................................... 8, 9, 12, 14, 21, 24

Illinois Mortgage Foreclosure Law ..................................... 1, 9, 10, 13, 17, 18, 22, 23

## Rules

Fed. R. Civ. P. 56(a) ........................................................................................................ 2

Local Rule 56.1 ................................................................................................................ 3

**Treatises**

Restatement (Second) of Torts (1979) ...................................................................*passim*

## INTRODUCTION

Nirav Thakkar's otherwise quiet life and existence was shattered in 2013 when Ocwen entered the picture. Thakkar had peacefully resided in the property at 311 Danbury Drive for approximately seven years when Ocwen began servicing the mortgage loan on the home. Almost immediately Ocwen began to agitate for claimed missed payments and unpaid fees. These claims snowballed despite numerous efforts on Thakkar's part to resolve the situation from February until October of 2013. In October of 2013, Ocwen ordered the invasion of Thakkar's home despite the fact Thakkar was not delinquent on his mortgage and his home was occupied and secure.

As a matter of business practice, Ocwen flaunts the statutory protections of the IMFL for consumers in Illinois by trampling upon their rights to the peaceable possession of their homes in the name of property preservation. Ocwen orders the invasion of consumer's homes in a pre-foreclosure setting on the basis of an exterior "drive-by" inspection. In a drive-by inspection, a vendor takes as little as one minute but  no more than fifteen minutes to view the outside of a home and make a determination that the home is either occupied or vacant. On a finding of vacancy, Ocwen claims it is required to invade the home and change the locks to secure the property. Ocwen does all of this through self-help and without any Court's authorization. Ocwen undertakes this scheme knowing that a consumer's home can be damaged, a consumer can be locked out, and their personal property can be taken.

To accomplish this scheme, Ocwen enlists its vendor, Altisource, along with the "on the ground" vendors that Altisource hires to actually perform the ordered work. These parties have a contractual scheme that requires each of them to engage in a literal "see no evil, hear no evil, speak no evil" process. To wit, Altisource requires by contract unwavering loyalty to complete every order received as quickly as possible and without question. The "on the ground" vendors then follow the mandate to do exactly as they are told without question and without regard to the

legality, vel non, of their conduct. After finding themselves the subject of a legal complaint, these defendants scatter like a covey of quail behind the feigned ignorance of the legality of their actions and the claim that they "must follow orders."

Thakkar's outcome is typical for a victim of this outrageous scheme. He has lost valuable property, he has been excluded from his home twice, his home has been invaded twice and he has suffered extreme duress to the point that he abandoned living in the home. To make this situation even worse, the second invasion of Thakkar's home occurred *after* the mortgage loan Ocwen serviced had been paid in full. However, the Defendants' collective lust to fill orders and turn dollars could not stop them from going back a second time and piling insult on top of injury. As will be shown herein, there is clearly sufficient evidence for Thakkar's claims to be presented to the jury.

## STANDARD OF REVIEW

Summary judgment is only appropriate if the pleadings, answers to interrogatories, admissions, affidavits and other material show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[D]isputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment does not "authorize[] trial on affidavits." *Id*. at 255. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether she is ruling on a motion for summary judgment or for a directed verdict." *Id*. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. 249. The *Anderson* court also noted that this standard mirrored the standard for a directed verdict which is "if, under the governing law, there can be but one

reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Id*. at 250-51 (internal citations omitted). Summary judgment is only appropriate where "no reasonable jury could find for the party opposing the motion." *Mills v. First Fed. S & L Ass'n*, 83 F.3d 833, 840 (7th Cir. 1996).

<div align="center">

**RESPONSE TO OCWEN'S "FACTS"**

</div>

Thakkar files concurrently herewith his separate responses to Ocwen's statement of fact [236], as well as his statement of additional fact. To the extent Ocwen's additional 4-1/2 pages of "facts" set forth in Ocwen's memorandum of law [233], attempts to set forth new or different facts from the record, that is an improper violation of the local rules and constitutes excessive statements of fact that should be disregarded. *See* Local Rule 56.1 and this Court's Standing Order.

<div align="center">

**ARGUMENT**

</div>

## I. OCWEN IS LIABLE FOR THE ACTIONS OF ALTISOURCE, BAXOL, LAUDAN & GREEN GROUP

Ocwen claims that it has no relationship with and, therefore, no control over the actions of the several contractors in this case. (Dkt. # 238 p.7.) Restatement (Second) of Torts §877, (1979) states that "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . orders or induces the conduct, if he knows or should know of circumstances that would make the conduct tortious if it were his own." *Janda v. Kwiatkowski*, 2007 U.S. Dist. LEXIS 5427, at *15 (N.D. Ill. 2007). In such a case the injured party may proceed to judgment against any or all of the responsible actors in a single or in several different actions. *See* RESTATEMENT (SECOND) OF TORTS, § 882. *Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir. 1985).

Comment (a) to Restatement (Second) of Torts § 876 states that "parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words and may be

implied and understood to exist from the conduct itself." *Cebulske v. Johnson & Johnson*, 2015 U.S. Dist. LEXIS 33042, at *10-11 (S.D. Ill. 2015) (citing Restatement (Second) of Torts § 876, cmt. (a) (1979)). This §876(a) definition also fits the conduct at issue in this case providing another theory upon which Ocwen can be held liable for the actions of the allegedly remote vendors. This is especially true when the Court considers Ocwen's admission that no trespass would occur without Ocwen providing the order to invade the property including the location of the property invaded. (SOAF ¶36).

Even accepting the defendants' explanation of their relationship at face value, Ocwen may still be held liable for the conduct of the Altisource vendors under well established principles of law governing trespass. "The Restatement (Second) of Torts is consistent with this limitation, for it defines liability for trespass as follows: One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally (a) enters land in the possession of the other, or causes a thing or a third person to do so." *Lilly Indus. v. Health-Chem Corp.*, 974 F. Supp. 702, 708 (S.D. Ind. 1997). *See also Loukas v. Clear Channel Outdoor, Inc.*, 2013 U.S. Dist. LEXIS 180635, at *4 (N.D. Ill. 2013).

Ocwen relies primarily upon the authority set out in *Jackson v. Bank of New York*, 62 F. Supp. 3d 802, 813 (N.D. Ill. 2014) (internal citations omitted) for its position that it cannot be liable under a respondeat superior theory for the action of any vendors. *Jackson* is distinguishable from the present case in a number of ways and has little to no utility in this matter. For instance, *Jackson* lacks any substantive discussion of liability under any of the restatement sections and authorities noted infra by Thakkar including §§ 158(a) or 875-877. Each of these restatement sections authorize the imposition of liability upon Ocwen for the trespass of a third party triggered by Ocwen's order for the property to be secured. *Jackson* also contains no evidence and lacks any discussion of, the contractual relationships of the defendants, or the degree of control that may or

may not have been present in those relationships.

Ocwen spills much ink arguing traditional agency analysis with an emphasis on control of the agents' actions. This "general analysis" is not the end of the analysis in this situation. See *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 425 (2012). In *Lawlor*, the Illinois Supreme Court was faced with a similar argument as Ocwen makes here, i.e., that the defendant could not be liable for the actions of an independent contractor. The *Lawlor* court explained "[t]hat someone is an independent contractor, however, does not bar the attachment of vicarious liability for his actions if he is also an agent. As this court has previously explained, no precise formula exists for deciding when a person's status as an independent contractor is negated." *Id*. at 427.

The *Lawlor* court instructed "the determination of whether a person is an agent or independent contractor rests upon the facts and circumstances of each case. [T]he cardinal consideration is whether that person retains the right to control the manner of doing the work. Courts should also consider the following factors in considering the question of whether a person is an agent or independent contractor: (1) the question of hiring; (2) the right to discharge; (3) the manner of direction of the servant; (4) the right to terminate the relationship; and (5) the character of the supervision of the work done. The presence of one or more of the above facts and *indicia* are not necessarily conclusive of the issue. These factors merely serve as guides to resolving the primary question of whether the alleged agent is truly an independent contractor or is subject to control." *Id*. at 427 (Internal citations and ellipsis omitted).

Ultimately the *Lawlor* court found an agency relationship existed, noting, "we recognize there was no direct evidence that North American knew how the phone records were acquired by investigators. The jury could reasonably infer, however, that North American was aware that Lawlor's phone records were not publicly available, and that by requesting such records from Probe and providing DiLuigi, Probe's president, with Lawlor's personal information, North

American was setting into motion a process by which investigators would pose as Lawlor to obtain the material." *Id.* at 428. Similarly here, Ocwen has admitted its order to secure Thakkar's property sets into motion a process by which another party would unquestioningly invade that property through a trespass. (SOAF ¶36). This trespass is an illegal action resulting directly from Ocwen's order. Also, the contractual terms requiring unquestioning obedience to the orders received constitute sufficient control as to make the remaining parties Ocwen's agent. See (SOAF ¶¶54-72). Like in *Lawlor,* the jury could infer that Ocwen's knowledge that illegal acts would follow its orders makes the vendors agents for purposes of these facts.

*Jackson* is also distinguishable with respect to the evidence of control that exists in this case. *Jackson* apparently did not obtain the contracts between the various parties in this daisy chain of burglary as Thakkar has done. See (SOAF ¶¶ 52-70; Thakkar Exs. 10-12). The contracts in this case and the testimony of the parties make clear that when Ocwen orders a property to be secured it expects the order to be completed. (SOAF ¶42; Thakkar Exs. 10-12). Ocwen admits its knowledge the order to secure a property will result in a trespass and a lock change (at minimum) at the property. (SOAF ¶¶27, 37) Altisource's contract with Baxol requires the orders to be carried out as quickly as possible and without question. Thakkar Ex. 11, (SOAF ¶¶ 58-61, Doc. 246 ¶25). Green Group also testified it retains no discretion and must carry out the orders it receives without question. (See Green Group. Dep., Dkt. # 236-9 at 19:1-20:20). Clearly Thakkar has substantial evidence of control all the way into Ocwen's lap. Ocwen also argues it does not dictate the manner and method of work performed. However, Ocwen cannot dispute its order to secure a property **mandates** a trespass will occur. (SOAF ¶¶ 27, 37). This is enough to trigger liability under Restatement §158(a).

Ocwen argues that if there is no principal-agency relationship, then Ocwen deserves judgment on all of Thakkar's claims. (Dkt. 238 at p. 11.) However, *Jackson* does not stand for that

proposition. *Jackson* only involved the question of whether the loan servicer could be *vicariously* liable for trespass, conversion, and invasion of privacy on a principal-agent theory. As noted, *Jackson* did not consider direct liability under any of the Restatement sections Thakkar has identified, i.e., §158(a) or §§875-877. *Jackson* undertook a traditional agency analysis without consideration of any of the rules of direct liability that are set forth in these Restatement sections. *Jackson* also does not consider the question of Ocwen's direct liability for consumer fraud, negligence, and civil conspiracy which Thakkar additionally alleges against Ocwen, discussed *infra*. These claims were apparently not at issue in *Jackson*.

Even if Ocwen could prove that the vendors were independent contractors and there was no direct liability claim, Ocwen could still be held liable for the conduct of the independent contractors. *Restatement (Second) of Torts*, § 414. "[S]ection 414 takes over where agency law ends by providing a theory of direct liability based on the existence of a duty of reasonable care. That duty is triggered when the employer--usually a general contractor--has retained supervisory control over the independent contractor without retaining control over all operative details of a project." *Aguirre v. Turner Constr. Co.*, 501 F.3d 825, 829 (7th Cir. 2007).

Here, Thakkar has offered substantial material evidence that Ocwen has retained supervisory control over the actions of the remaining defendants by dictating the terms, timing and manner of performance of the property preservation services through the contractual terms existing between the parties. Failure to follow these requirements can lead to the vendor being required to go back and make corrections, have the payment for their work order reduced or not paid at all, and potentially being charged back for the costs of having another vendor go back to the property and complete the work order properly. Thakkar Exs. 10-12.

"Whether a duty exists under §414 is a question of law and turns on whether the defendant controls the work in such a manner that he should be held liable. For the rule to apply, the

employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress, or to make recommendations which may or may not be followed. There must be such a retention of a right of supervision that the subcontractor is not entirely free to do the work in his own way." *Restatement (Second) of Torts* § 414, Comment *(c)* at 388 (1965). When a general contractor entrusts work to a subcontractor, he's subject to liability if he: (1) fails to prevent the subcontractors from doing the details of the work in a way unreasonably dangerous, (2) knows or should know the work is being so done, and (3) has opportunity to prevent it by exercising his retained power of control. *Restatement (Second) of Torts* § 414, Comment *b* at 387-88 (1965)." *Moorehead v. Mustang Constr. Co.*, 821 N.E.2d 358, 360 (2004); *Aguirre v. Turner Constr. Co.*, 501 F.3d 825, 829 (7th Cir. 2007). A jury could determine that Ocwen retained such a right of supervision that none of the remaining defendants are entirely free to do the work their own way under penalty of having their contracts cancelled by the vendors' counterparty.

## II. Thakkar's claims do not fail as a matter of law independently

### A. Thakkar's ICFA Claim Does Not Fail as a Matter of Law.

#### i. Ocwen Engaged in Unfair or Deceptive Conduct

Ocwen engaged in a series of actions that violate ICFA separately and apart from the actions of the remaining defendants. These acts begin with numerous systemic errors in the servicing of Thakkar's loan and end with Ocwen's participation in the wrongful scheme which led to the dispossession of Thakkar from his property. Ocwen is charged with knowledge of the applicable law. Since at least 2011, case law has been on record in this jurisdiction holding that an ICFA unfairness claim can arise from a mortgage servicer dispossessing a consumer of his property without notice or court approval. *See Boyd v. U.S. Bank, N.A.*, 787 F. Supp. 2d 747, 755

(N.D. Ill. 2011). *Boyd* also held "[d]efendants' actions offended public policy as embodied in the IMFL." [I]n residential real estate foreclosure actions, the presumptive right to possession during foreclosure rests with the mortgagor of the residential real estate."" *Id*. at 756.

Any claimed ignorance of the law is no defense. "The violation (knowing or unknowing) of other statutes, regulations, or legal rules does not automatically predicate an ICFA claim, but can predicate a claim if the alleged misconduct is independently deceptive or unfair within the meaning of the ICFA." *Id*. at 755. Ocwen was a defendant in *Frazier v. US Bank Nat'l Ass'n*, 2013 U.S. Dist. LEXIS 45330, at \*5 (N.D. Ill. 2013) where this type of conduct was found to be actionable. Therefore, prior to the wrongful entries in this case, Ocwen had both general (*Boyd*) and specific (*Frazier*) knowledge of case law that this type of conduct was unlawful and actionable in the State of Illinois. Ocwen does not seem to care what the law is on this point. Ocwen testified that it did not seek any court's permission to enter Thakkar's premises and has *never sought* any court's permission to enter any property in the State of Illinois at any time between 2013 and the date of Ocwen's 30(b)(6) deposition. See (SOAF ¶37).

Ocwen's attitude towards its legal obligations is either reckless or intentional. This is especially true when considering Ocwen's admission that the property would not have been secured without Ocwen's work order to Altisource. (SOAF ¶37). Ocwen knew when the order was issued that the locks would be changed, but defers to its vendors as to whether utilities will be terminated and personal property removed. (SOAF ¶26). Ocwen also has no mechanism to stop work orders once they are issued even when the loan is paid current. (SOAF ¶42).

This evidence shows that Ocwen ordered default property preservation services in violation of the time frames set out in its own internal rules and in conflict with the timelines of its own letters and that when these services were carried out in the first instance the loan was not in default. (SOAF ¶¶33-34, 43-49). As to the second break-in, Ocwen allowed Altisource to

commandeer its system of record to order property preservation services for a loan that was paid in-full. (SOAF ¶¶38-39). When Ocwen was contacted by the Naperville Police, instead of relating to them that Altisource had ordered services to Thakkar's property, Ocwen refused to provide any information about who had entered Thakkar's property. (SOAF ¶40). Likewise, Altisource stonewalled the Naperville Police despite a stated policy of taking appropriate actions against a vendor engaged in dishonest conduct. (SOAF ¶¶ 76-79).

Ocwen engaged in the following unfair acts: Ocwen ordered the invasion of Thakkar's real property and effectively Thakkar's dispossession from the property. (SOAF ¶¶ 26-27). Ocwen knew its orders would result in its agents breaking into Thakkar's home. *Id.* Ocwen's orders to its agents caused Thakkar to be locked out of his home. Doc. 236-1 at 86:2-14. Ocwen's orders resulted in the removal and loss of Thakkar's personal property. Doc. 236-1 at 212:4-14. Ocwen knowingly utilizes an inadequate software platform, RealServicing, which Ocwen knew was incapable of many basic functions of a mortgage servicing platform, including accurately posting payments, accurately maintaining records of written and oral communications, accurately dating and tracking written correspondence, and produced inaccurate records. Thakkar Exs. 5-7, 23.

The record evidence also supports a finding that Ocwen is actively engaged in a conspiracy to undermine, ignore and defeat the protections afforded citizens of the State of Illinois by violating the obligations imposed under the IMFL *en masse*, repeatedly and intentionally, with full knowledge of the illegality of its conduct and that of its co-conspirators. Ocwen also undertakes actions which it knows will undermine, ignore and defeat the protections afforded citizens of the State of Illinois by violating the obligations imposed under the IMFL *en masse* and Ocwen undertakes this conduct with full knowledge of the illegality of its conduct. As noted infra, prior to the wrongful entries in this case, Ocwen had both general (*Boyd*) and specific (*Frazier*) knowledge of case law that this type of conduct was unlawful and actionable in the State of Illinois.

Despite this notice, Ocwen did not seek any court's permission to enter Thakkar's premises or any other premises in the State of Illinois at any time between 2013 and the date of Ocwen's 30(b)(6) deposition. See Doc. 236-8 at 211:3 to 213:22.

Ocwen also concedes that its order to secure the property is the trigger to the invasion of Thakkar's (or any other consumers) property. Doc. 236-8 at 124. Ocwen knows that its order to secure the property will result in, at least, the consumer being locked out of their home but can result in the termination of utilities and the removal of all personal property from the home. Doc. 236-8 at 123. Ocwen also has no mechanism to stop work orders such as orders to secure a property once they are issued even when the loan is paid current. Doc. 236-8 at 150:10-154.

Thakkar's interest in the real property in question, first as a leaseholder and then as fee title owner vests in Thakkar legally protected rights. *See Jackson*, at 813. The ordering of the illegal invasion of a consumer's home, whether by leasehold or fee simple interest, is the type of conduct that would obviously implicate general consumer protection concerns. This is especially true in light of the fact that Ocwen had preexisting notice both general and specific that the conduct in question is illegal and yet Ocwen continues to engage in this conduct. (SOAF ¶75).

Ocwen engaged in the following deceptive acts: Ocwen represented to Thakkar that Ocwen had a legal right to lock him out of the property. Ocwen failed to disclose that it was unlawful to seek to take possession of a consumer's property without a court order.

Ocwen's intent that Thakkar rely upon these acts can be inferred from Ocwen's conduct. *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 349 (7th Cir. 2015). Ocwen made no effort to see to it that Thakkar's property was returned to him. Ocwen never acknowledged it lacked the legal right to order his property to be invaded in the name of "preservation services."

The conduct complained of clearly involves trade or commerce as it involves mortgage servicing, the mails, interstate telephonic communications and emails, as well as property

preservation services which were invoiced, billed and paid in multiple states.

Thakkar was damaged in the following ways: Thakkar lost approximately $100,000 in personal property (Doc. 236-1 at 212:4-14), Thakkar was forced to hire a locksmith to replace deadbolts and fix his patio door (Doc. 236-1 at 128:22-129:17), Thakkar was forced to repair a water heater damaged by the defendants (Doc. 236-1 at 126:21-127:16), Thakkar was without water in the home for at least a week (Doc. 236-1 at 128:3-15), Thakkar has suffered severe emotional distress and fear which caused him to abandon living in the subject property (Doc. 236-1 at 172:15-175:15; 184:7-185:6; 200:1-202:8; Thakkar Ex. 15 at 23:2-14; Thakkar Ex. 16 at 7:18-8:1, 14:2-17, 15:13-17:18; Thakkar Ex. 17 at 16:18-17:16, 19:15-22:16). These damages clearly flow from the conduct of Ocwen and the codefendants. In fact, Altisource admits locking a consumer out of their home and removing their personal property will cause a consumer to experience distress. (Doc. 236-2 at 151:19-152:7). From this record it is clear that there is substantial evidence to support sending this issue to the jury.

## ii. Thakkar's Damages are Proximately Caused by Ocwen.

As the Court is aware, the jury in this case will be instructed that proximate cause is defined as "a cause that, in the natural or ordinary course of events, produced the Thakkar's injury. It need not be the only cause, nor the last or nearest cause. It is sufficient if it combines with another cause resulting in the injury." Here, even if the Court were to determine that Ocwen was not liable for the conduct of any other party, Ocwen would still have ICFA liability for its orders to invade the subject property and take possession of it illegally because all of the harm suffered by Thakkar flows directly from and is proximately caused by these unlawful orders.

Ocwen appears to make two arguments related to proximate causation. First, Ocwen argues that Thakkar cannot recover under his ICFA count because he is not the borrower on the loan in question. This is obviously not the law. In fact, the *Jackson* case, which Ocwen puts such great

weight on in brief, addressed this very issue and found "Although it is undisputed that Plaintiff did not hold legal title to the Kristine Lane residence, Thakkar has pointed to evidence in the record from which a jury could conclude that he had a possessory interest in the home at the time of the alleged trespasses." *Jackson* at 813. There is no dispute that Thakkar had a leasehold interest in the subject property at the time of the first break-in and a fee simple interest in the property at the time of the second break-in. See Thakkar Ex. 24. Therefore, this argument by Ocwen is borderline frivolous and is clearly without merit.

Second, Ocwen argues that it cannot be held vicariously liable for the criminal actions of Green Group or its subcontractors. Ocwen frames this question in the context of an intervening criminal act by Green Group's subcontractors. This is simply not the case. Ocwen ignores the undisputed evidence that Ocwen's orders to invade Thakkar's premises was the catalyst for any of the other parties' efforts to "secure" Thakkar's property. (SOAF ¶27). Ocwen also ignores the fact that Ocwen's order was illegal under Illinois law when it was issued because there was no court order of possession and Ocwen did not seek any order of possession. (SOAF ¶37). Ocwen also ignores the general (*Boyd*) and specific (*Frazier*) notice Ocwen had undisputedly received that this conduct was illegal before the order to invade Thakkar's home was given.

"A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (internal quotations omitted). Clearly, this fact scenario and the ordering of the self-help eviction was illegal when issued – as it was without any court approval and in violation of the IMFL. Ocwen's codefendants have contracts to provide these property preservation services and each of them ignore the illegality of this conduct to pursue this common purpose. As this Court recently wrote, "To be liable as a conspirator you must be a voluntary participant in a common venture, although you need not have agreed on the details of

13

the conspiratorial scheme or even know who the other conspirators are. It is enough if you understand the general objectives of the scheme, accept them, and agree, *either explicitly or implicitly*, to do your part to further them." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) (emphasis added). *U.S. ex rel. Lisitza v. Par Pharm. Cos.*, 276 F. Supp. 3d 779, 808 (N.D. Ill. 2017). The evidence in this case clearly places the defendants in this position together.

Ocwen has direct knowledge of the illegality of its conduct and is, therefore liable for the conduct of every other party in the chain of causation. *See Mopex, Inc. v. Chi. Stock Exch.*, 2003 U.S. Dist. LEXIS 2807, at *12 (N.D. Ill. 2003) ("A plaintiff must allege not only that one of the conspirators committed an overt act in furtherance of the conspiracy, but also that such act was tortious or unlawful in character. This independently tortious act *in furtherance* of the agreement forms the basis of liability for all civil conspirators." (Internal citations omitted). Ocwen's illegal order to invade Thakkar's home was the catalyst for Thakkar's harms and trespass is tortious act.

Thakkar suffered economic injuries sufficient to trigger ICFA liability. Thakkar documented in the range of $100,000 in economic losses related to personal property plus hundreds of dollars in repairs to his doors and water heater arising from the illegal lockout triggered by Ocwen's order. See SOAF ¶ 80.

**B. Thakkar's Claim for Negligence Does Not Fail**

"The four factors courts typically consider in determining whether a duty exists are: (1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against injury; and (4) the consequences of placing that burden on the defendant." *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018). Here, each factor weighs heavily in favor of finding a duty on the part of Ocwen. It is clearly foreseeable that a consumer will be injured if they are locked out of their home based on an inaccurate determination of vacancy. The likelihood of

injury is very high. As Ocwen acknowledges, at minimum, the consumer will be locked out of their home. (SOAF ¶27). The consumer may also suffer the loss of their personal property and the termination of their utilities as well as the possibility of resulting damage to the home or its electrical or plumbing systems.

Ocwen argues that an intervening illegal act breaks the chain of causation. While correct in the appropriate context, Ocwen's cited authorities on this issue do not apply for the reasons noted in the previous section. Ocwen's order to invade Thakkar's home was the catalyst illegal act; each act that followed was simply in furtherance of carrying out Ocwen's illegal order. Ocwen knew its order called for illegal acts when Ocwen ordered the invasion of Thakkar's home. It was foreseeable that illegal conduct would occur during the "securing" of Thakkar's premises since the very act of securing the premises without a court order was itself illegal.

Thakkar's has asserted that Defendants owed a duty to Thakkar to use reasonable care when determining the occupancy status, making a "vacancy" determination, and performing internal inspections, lock changes and property preservation activities. Ocwen acknowledges the importance of getting the vacancy determination right. Doc. 236-8 at 108:13-110:11.

Despite this, Ocwen will not even expend the effort to call a consumer to determine if the vacancy determination is accurate. Doc. 236-8 at 81:6-83:14. Ocwen also does not review property inspections to determine if they appear to accurately reflect the occupancy status. Doc. 236-8 at 135:13-136:3. The legal question appears to be whether Ocwen owes any duty to a consumer to determine if Ocwen's inspection vendor has accurately determined vacancy before ordering the consumer's home invaded. This question is the Court's to answer. "Federal law treats the question whether a duty exists as an issue of law to be decided by a judge." *Reynolds v. Henderson & Lyman*, 903 F.3d 693, 697 (7th Cir. 2018).

15

The magnitude of the burden of guarding against injury is slight to nonexistent. Ocwen could have called Thakkar (or any other consumer) and asked if he still occupied the home. Ocwen had numerous opportunities during the multitude of calls between Thakkar and Ocwen between the vacancy determination and the illegal invasion of Thakkar's home. Lastly, the consequence of placing this burden on the defendant is virtually nonexistent. For the servicer, the burden is as simple as inserting a question into its verification process that takes place during some or every call to or from a consumer. This is no great burden in comparison to the catastrophic effect of an inaccurate determination of vacancy. Each of these factors is tilted greatly in favor of finding a duty on the part of Ocwen in this situation.

Secondly, Defendants voluntarily took affirmative steps to control access to and possession of the subject property, thus taking control and dominion over Thakkar's personal property and real property. Once the Defendants engaged in this voluntary undertaking, they owed a duty to not to increase the risk of harm to the person affected by undertaking. "Pursuant to the voluntary undertaking doctrine as formulated by the Illinois Supreme Court, one who undertakes, gratuitously or for consideration, to render services to another is subject to liability for bodily harm caused to the other by one's failure to exercise due care in the performance of the undertaking." *TNT Logistics N. Am., Inc. v. Bailly Ridge TNT, LLC*, 2006 U.S. Dist. LEXIS 73316, at *24 (N.D. Ill. 2006). The Illinois Supreme Court "defines the applicable undertaking as necessary for the protection of a third person or his things and finds liability only in the event of physical harm." *Id*. at *27 (Internal quotes omitted).

### C. Thakkar's Claim for Trespass Does Not Fail.

Ocwen again argues that it had no role in the conduct of the downstream vendors. This is legally and factually incorrect. The *Jackson* case relied so heavily upon contains Ocwen's own undoing. "In Illinois, one may be liable in trespass for causing a thing or third person to enter the

land of another through a negligent act or an intentional act. That is, someone can be liable for trespass for an intrusion by a third party if he acts with knowledge that his conduct will, with a substantial degree of certainty, result in the intrusion." *Jackson* at 812-13. Ocwen acknowledged that its order was the triggering event that led to the trespass. Doc 236-8 at 108:22-110:11. Ocwen's contention that it mailed Thakkar a letter about the alleged vacancy is disputed. (SOAF ¶22). Ocwen's own testimony shows that it directed the actions which led to the trespass making its citation to *Sak v. Citimortgage* irrelevant and inapposite.

Ocwen next takes the position, almost in passing, that the mortgage authorized Ocwen to secure the property. This is also untrue. The mortgage is Thakkar's Ex. 3. Paragraph 8 of the mortgage instrument only authorizes the Lender to make "reasonable entries and inspections of the Property by giving the borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the property." Paragraph 13 of the mortgage states that Illinois law governs the mortgage. This means that Ocwen obtains to no greater rights to enter the premises through the mortgage than those rights allowed by Illinois law.

As the Court is well aware, Section 1701 of the IMFL governs the "Right to Possession" of mortgaged residential real estate. 735 ILCS 5/15-1701. Under this statute, subpart (a) provides that "Possession under this Article includes physical possession of the mortgaged real estate to the same extent to which the mortgagor, absent the foreclosure, would have been entitled to physical possession." *Id*. Subpart (f) states that the provisions providing for possession of mortgaged real estate supersede any other inconsistent statutory provisions, and that the right to possession cannot be modified by any other instrument. *Id*. Therefore, even if paragraph 8 of the mortgage contract provided the lender carte blanche to enter the Property for any reason or no reason and at any time, paragraph 8 would still be trumped by section 1701(f). *See* 735 ILCS 5/15-1701(f) ("Except as may be authorized by this Article, no mortgage or other instrument may

modify or supersede the provisions of this Article.").

Likewise, whether or not a payment default existed at the time of Ocwen's order to invade Thakkar's home is irrelevant. Section 1701(a) of the IMFL provides specific protections for borrowers in foreclosure. 735 ILCS 5/15-1701(a) ("The provisions of this Article shall govern the right to possession of the mortgaged real estate during foreclosure.") The "default" status of the loan is not a factor in determining a borrower's right to possession during foreclosure. *Id*. In fact, the only potential safe harbor for this conduct is not even argued by Ocwen and would not apply if Ocwen had argued for the safe harbor.

The IMFL "safe harbor" for mortgagees to enter "abandoned" real property is found at 735 ILCS 5/15-1505.8(j). However, this "safe harbor" requires the mortgagee to first make a good-faith determination that the property is "abandoned" as defined in 735 ILCS 5/15-1200.5. Ocwen does not even attempt to make a factual showing of "abandonment" in accordance with the IMFL. There is no record evidence that shows any efforts by Ocwen to make any "abandonment" determination, or even consider the requirements of 735 ILCS 5/15-1200.5 before ordering the invasion of Thakkar's home.

### D. Thakkar's Claim for Conversion Does Not Fail.

Ocwen claims that it cannot be held liable for the independent acts of a third party. The only problem with this position is that the illegal acts of the third party are not independent and they arise from the illegal order to invade Thakkar's home issued by Ocwen. As noted in subpart A(ii) herein, there is no break in the causality chain for an illegal act arising from an order to commit the illegal act. The parties here are part of a conspiracy to engage in illegal violations of the IMFL en masse. Ocwen understands that when it issues an order to invade a consumer's home in violation of Illinois law that one possibility is that the vendor will remove all of the personal property from the home. Doc. 236-8 at 108:22-110:11.

18

Ocwen does not claim that Thakkar fails to meet any element of conversion. Instead, Ocwen rests its position on the argument that the removal of the property was a criminal act. However, Green Group testified it understood its obligations to be to empty the house from wall to wall. Green Group testified to receiving orders to do work on the property. Doc. 236-9 at 12:13-22. This work included removing all personal property from the home. Doc. 236-9 at 14:3-21 and Thakkar Ex. 25 at 00009. This document and this testimony is clearly sufficient evidence to put this question to the jury over Ocwen's objection.

Ocwen's order resulted in Defendants assuming dominion and control over the real and personal property illegally and without any authorization from Thakkar. As previously noted, the "agency chain" is unbroken through to the actual entrants onto Thakkar's property because of the illegal nature of the entire scheme and the illegal actions of Ocwen through to the vendors on the ground under well-established conspiracy law set out in A(ii) herein.

**E. Thakkar's Claim for Invasion of Privacy Does Not Fail.**

Ocwen cites *Lovgren v. Citizens First Nat'l Bank of Princeton,* 126 Ill.2d 411, 417 (1989) for the premise the Illinois Supreme Court has not recognized a cause of action for intrusion upon seclusion. However, the Supreme Court of Illinois did officially recognize the cause of action in 2012. *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 425 (2012).

In *Lovgren*, the Illinois Supreme Court analyzed a fact pattern to determine if the facts met the elements of intrusion upon seclusion. The *Lovgren* court specifically noted "The basis of the tort is not publication or publicity. Rather, the core of this tort is the offensive prying into the private domain of another." *Id*. The *Lovgren* court went on to give several examples of the type of conduct that would form the basis of the tort. The frst example listed was invading someone's home. *Id*. Without Ocwen's order there would have been no invasion of Thakkar's home. Without rehashing the entire argument made earlier at section A(ii) of this brief, it is clear Ocwen

19

understood illegal conduct would result from its order to invade the premises. Ocwen cannot avoid liability simply because it paid another to undertake the actions Ocwen ordered.

Ocwen next argues that Thakkar has pointed to no private facts. This again, is not true. Thakkar's home was invaded, an example of actionable wrong stated specifically by the Illinois Supreme Court in *Lovgren.* Further, Thakkar's bedroom was rummaged through, his banking records and financial records containing sensitive personal information was taken, medical records and medications were taken. Doc. 236-1 at 98:12-101:11.

Next, Ocwen argues that Thakkar has suffered no physical harm. This is not the law. The *Lawlor* court held, "The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the information outlined." *Id*. at 425. The elements of this tort are "(1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion must be offensive or objectionable to a reasonable man; (3) the matter upon which the intrusion occurs must be private; and (4) the intrusion causes anguish and suffering." *Melvin v. Burling*, 141 Ill. App. 3d 786, 789 (1986).

Thakkar has provided evidence of mental anguish and testified that his fear for his own safety caused him to abandon living in the subject property. Doc. 236-1 at 184:7-16, 199:18-201:9. This evidence alone is sufficient to show a triable issue related to Thakkar's anguish and suffering. Thakkar also has several lay witnesses who corroborate the mental anguish claims. (Thakkar Ex. 15 at 23:2-14; Thakkar Ex. 16 at 7:18-8:1, 14:2-17, 15:13-17:18; Thakkar Ex. 17 at 16:18-17:16, 19:15-22:16). Thakkar specifically linked this anguish to the invasions of his home. Contrary to Ocwen's argument, Thakkar's testimony and the corroborating testimony of his lay witnesses provide sufficient evidence to put this question to the jury.

### F. Thakkar's Claim for Civil Conspiracy Does Not Fail.

Ocwen's argumenta are specious. The elements of a civil conspiracy as "(1) a combination

of two or more persons; (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means; (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Vulcan Golf, LLC v. Google, Inc.,* 552 F. Supp. 2d 752, 782 (N.D. Ill. 2008).

The first two elements obviously exist. Ocwen, Altisource, Laudan, and Baxol constitute "two or more persons" and the series of undisputed contracts between the parties for the purpose of providing property preservation services. Thakkar Exs. 10-14. Providing these services is not per se illegal. The manner in which the services are provided is illegal. Ocwen has testified that it did not in this case and does not in any case ever seek any court's permission before ordering any Illinois residential property secured. Doc. 236-8 at 210:6-211:14. Ocwen has also testified when an order to secure a property is issued at minimum the locks on the house will be changed. Doc. 236-8 at 123:4-6. Ocwen also testified that without its order to secure the Thakkar property it would not have been secured. Doc. 236-8 at 123:22-124:11.

As to the third element, it cannot be argued that invading Thakkar's home is not a tortious or unlawful act. Case law points directly to the invasion of a home as textbook example of intrusion upon seclusion. *Boyd* and *Frazier* are but two of many cases in this District holding that the conduct in question is a violation of ICFA. Restatement Second of Torts §§ 158(a) or §§875-877 all provide for tort liability for the conduct that has occurred in this case. Thakkar has also provided ample authority that the conduct in question constitutes trespass, conversion and negligence. Since Thakkar has offered substantial evidence in support of each of his other tort claims to allow the claim to be presented to the jury there is sufficient evidence of underlying tortious conduct to support the conspiracy count going to the jury as well.

Breaking down Ocwen's position further, Ocwen argues there is no evidence to support Thakkar's allegation the defendants entered into express agreements. The agreement between

Ocwen and Altisource is found at Plaintiff's Ex. 10. The agreement between Altisource and Baxol is found at Plaintiff's Ex. 11. The agreement between Altisource and Laudan is found at Plaintiff's Ex. 12. Clearly there are express agreements between the defendants.

The lynchpin of these agreements is the unyielding obligation to complete the orders without question as and quickly as possible. Baxol and Green Group testified that they lacked authority to question orders given the contractual obligation to perform any order issued by their upstream coconspirator. See Doc. 236-9 at 19:1-20:20; Doc. 236-4 at 78:22-79:9.

Ocwen also argues that there is no evidence to support the allegation that the agreements call for Defendants to ignore the possessory rights of homeowners in violation of law. Besides misrepresenting Thakkar's allegations in the complaint, Ocwen completely ignores its own testimony on the subject. Ocwen has admitted ignoring the IMFL and the absolute right of residential property owners to possession of their property prior to the entry of a court order of possession. Doc. 236-8 at 123:4-6, 123:22-124:11, 210:6-211:14.

Irrespective of whether Ocwen has direct access to the software of its coconspirators, Ocwen acknowledges that its order to secure a property will result in the changing of the locks, at minimum and may also result in the termination of utilities, damage to the home and the removal of personal property from the home. (SOAF ¶27). The act of changing the locks, in and of itself, is an interference with any affected consumer's right to the peaceable possession and quiet enjoyment of their home. *Boyd v. U.S. Bank, N.A.*, 787 F. Supp. 2d 747, 756 (N.D. Ill. 2011). Ocwen's direct contractual counterparty, Altisource, admits that changing the locks will cause a consumer to experience distress. Doc. 236-2 at 151:19-152:7.

Ocwen next argues that Thakkar "lumps together" the conduct of the defendants. This is much more akin to an argument to be made at the pleadings stage. Ocwen does not claim that it is confused as to Thakkar's theory of the case. The allegations regarding conspiracy in this case are

not "conclusory and vague." Rather, the substantive evidence that supports this case and this cause of action being submitted to the jury is rooted squarely in the admitted conduct of Ocwen, Altisource and the rest of the conspirators in this case.

This Court recently held "To be liable as a conspirator you must be a voluntary participant in a common venture, although you need not have agreed on the details of the conspiratorial scheme or even know who the other conspirators are. It is enough if you understand the general objectives of the scheme, accept them, and agree, *either explicitly or implicitly*, to do your part to further them." *Jones v. City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1988) (emphasis added). *U.S. ex rel. Lisitza v. Par Pharm. Cos.*, 276 F. Supp. 3d 779, 808 (N.D. Ill. 2017).

Ocwen cannot argue that the express agreements to provide property preservation services do not constitute a common venture among Defendants. Ocwen is not required to know every vendor or subvendor involved in the scheme. It is enough that Ocwen knows it is issuing orders for pre-foreclosure residential real estate in Illinois to be "secured" by invading the premises and locking out the consumers without seeking any court's permission to do so. This satisfies this Court's standard announced in *Par Pharm* because Ocwen agrees to do its part (issue the orders) and Ocwen understands the general objective of the scheme will result in consumers being locked out of their home and Ocwen both accepts and seeks this outcome.

Ocwen cannot deny the contractual terms between itself and Altisourc. or the express agreements between Altisource and Baxol or Baxol and Green Group. Ocwen's order to invade consumers' homes does in fact constitute direction to the remaining Defendants to ignore the possessory rights of homeowners in Illinois in violation of the IMFL. 1Ocwen's order to invade a consumer's home, including Thakkar's home, is the triggering event for the other members of the conspiracy to take action. Without Ocwen's triggering order its co-conspirators would have no idea what property or properties should be targeted for invasion and their conduct would then

become nothing more than random garden variety burglary.

### G. The Questions of Punitive Damages Should Go to the Jury

Ocwen cites *Parker v. Four Seasons Hotels, Ltd*., 845 F.3d 807, 812 (7th Cir. Ill. 2017) for the premise "[t]he preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law." While *Parker* does in fact contain that language, the case does not stand for the proposition Ocwen seems to infer. *Parker* points to the *Barton* case for the premise that, "[w]hether punitive damages can be awarded for a particular cause of action is a matter of law, but the question of whether a defendant's conduct was sufficiently willful or wanton to justify imposing punitive damages is generally for the jury to decide." *Barton v. Chi. & N. W. Transp. Co*., 757 N.E.2d 533, 555 (Ill. App. 1st Dist. 2001). The threshold question then is whether a cause of action allows for a punitive damages award.

Illinois law permits the imposition of punitive damages in appropriate circumstances for violations of ICFA, trespass, conversion, intrusion upon seclusion, and civil conspiracy. "Generally, punitive damages are awarded when the underlying tort is accompanied by aggravating circumstances such as willful, wanton, malicious, or oppressive conduct." *City of Evanston v. Texaco, Inc.*, 19 F. Supp. 3d 817, 828 (N.D. Ill. 2014) "Punitive damages may be awarded for violations of the Illinois Consumer Fraud Act based on unfair conduct in cases where the defendant acts maliciously or with deliberate indifference. *Wendorf v. Landers*, 755 F. Supp. 2d 972, 981 (N.D. Ill. 2010)." *Hammer v. RCS, Inc*., 2015 U.S. Dist. LEXIS 162636, *75 (N.D. Ill. 2015). Punitive damages are available for intentional trespass. *First Nat'l Bank v. Amco Eng'g Co.*, 335 N.E.2d 591, 594 (Ill. 1975). Punitive damages may also be recovered for a willful and wanton trespass. *Rodrian v. Seiber*, 551 N.E.2d 772, 775 (Ill. App. 1990). Punitive damages are available for a claim of conversion. *Cirrincione v. Johnson*, 184 Ill. 2d 109 (Ill. 1998). *Motherway, Glenn & Nepleton v. Tehin*, 2003 U.S. Dist. LEXIS 10928, at *15-16 (N.D.

Ill. 2003). Punitive damages are also available for intrusion upon seclusion. *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 430 (2012). The case of *Sarno v. Thermen*, 608 N.E.2d 11 (1992) authorizes the recovery of punitive damages for civil conspiracy.

Ocwen also argues that there is no evidence from which a reasonable jury could conclude that Ocwen through its superior or managerial officers deliberately participated in any wrongful or outrageous conduct of "Green Group or the other defendants" and therefore the Court should not allow the issue of punitive damages to go to the jury. Again, this position ignores Ocwen's own admissions set out herein. Ocwen issued the orders which triggered the unlawful conduct in this case. Ocwen cannot issue an order that it knows is illegal and will result in further illegal actions by its conspirators and then deny its responsibility for the illegality.

Ocwen's conduct in this instance is outrageous to an extreme. Ocwen admits that it ignores the requirements of Illinois law and orders its coconspirators to invade the residential real estate of consumers throughout the State of Illinois in direct contravention of Illinois law. Ocwen admits its knowledge that these orders will result in Illinois consumers being locked out of their homes. Ocwen is also aware that, like in Thakkar's case, the homes can be damaged, utilities terminated and personal property taken from the consumer's home. A reasonable jury could infer from the evidence that Ocwen undertakes this conduct intentionally to expedite the foreclosure process through self-help, to circumvent the applicable law, to profit from expedited foreclosures and to bully, intimidate and buffalo consumers to abandon their homes and their legal possessory rights to their homes and property. A more outrageous, malicious and harmful scheme would be hard to concoct in the context of foreclosure and mortgage servicing.

## CONCLUSION

Ocwen's conduct in this case is an outrageous example of corporate arrogance and lawbreaking run amok. Ocwen engaged in a scheme to subvert the legal protections afforded to

Illinois citizens and illegally ordering the invasion of consumers' homes *en masse*. Thakkar has provided substantial evidence in support of each claim. There is no basis to grant summary judgment on any of the claims asserted against Ocwen. Ocwen's motion must be denied in full.

Dated: November 19, 2018                          Respectfully submitted,

<div style="margin-left:40%">

*/s/ Nick Wooten*
Nicholas Heath Wooten
Nick Wooten, LLC
4935 Bay Hill Drive
Conway, AR 72034
nick@nickwooten.com

*/s/ Stephen Sotelo*
Stephen T. Sotelo
The Homer Law Firm, P.C.
Fifth Avenue Station
200 E. 5th Avenue, Suite 123
Naperville, IL 60563
ssotelo@homerlawoffices.com

*/s/ Ross Zambon*
Ross Michael Zambon
Zambon Law, Ltd.
(of counsel Sulaiman Law Group, Ltd.)
2500 S. Highland Ave., Suite 200
Lombard, Illinois 60148
rzambon@sulaimanlaw.com

*Attorneys for Plaintiff Nirav Thakkar*

</div>

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 19, 2018 a true and correct copy of the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO OCWEN'S MOTION FOR SUMMARY JUDGMENT was served upon all counsel of record for the Defendants via electronic filing.


*/s/ Nick Wooten*
Nicholas Heath Wooten
Nick Wooten, LLC