**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NIRAV THAKKAR, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:15-cv-10109 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| OCWEN LOAN SERVICING, LLC, a Delaware | ) | |
| limited liability company, ALTISOURCE | ) | |
| SOLUTIONS, INC., a Delaware corporation, | ) | |
| ALTISOURCE PORTFOLIO SOLUTIONS, S.A., | ) | |
| a Luxembourg corporation, BAXOL | ) | |
| PROPERTIES, LLC, an Indiana limited liability | ) | |
| company and LAUDAN PROPERTIES, LLC, an | ) | |
| Ohio limited liability company, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF NIRAV THAKKAR'S LOCAL RULE 56.1(b)(3)(C)**
**STATEMENT OF ADDITIONAL MATERIAL FACTS IN**
**RESPONSE TO OCWEN'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Nirav Thakkar ("Thakkar"), through the undersigned counsel, files the following

Local Rule 56.1 Statement of Additional Material Facts (hereinafter "SOAF") in response to

Ocwen's motion for summary judgment [Dkt. ##233, 238] as follows:

1. Plaintiff Nirav Thakkar ("Thakkar") was not a party to the mortgage instrument

recorded with the Will County Recorder of Deeds on November 14, 2006, as Document No. R

2006189967 (the "Mortgage"). (Mortgage, Dkt. #236-10.)

2. None of Defendants were a party to the Mortgage instrument. (*Id.*)

3. Ocwen initially became involved in the Danbury Drive loan through the purchase of

mortgage servicing rights from the GMAC bankruptcy. This occurred in February of 2013.

(Ocwen Dep., Dkt. #236-8 at 41:1-18.)

4. Ocwen was required to maintain the GMAC Fiserv mortgage servicing platform as

operational for more than a year while Ocwen transferred loans over to its RealServicing mortgage servicing platform in stages. Fiserv is not Ocwen's servicing system of record. Fiserv did not integrate with RealServicing.  (*Id.* at 43:1-44:19.)

5. Ocwen retained a group of GMAC employees to operate the Fiserv system after Ocwen purchased the GMAC mortgage servicing rights. (*Id.* at 53:16-54:14.)

6. Ocwen transferred Thakkar's loan from Fiserv to its system of record, RealServicing, in September of 2013. (*Id*. at 54:15-16.)

7. While Thakkar's loan was in Fiserv between February and September of 2013, there were no records of Thakkar's loan in RealServicing. (*Id*. at 54:17-55:6.)

8. Between February and September of 2013, if Thakkar contacted Ocwen he would have been directed to employees who were still utilizing the Fiserv database and all records relating to mortgage loan servicing activity would have been entered in the Fiserv database. (*Id*. at 60:16-62:11.)

9. After the loan transferred to RealServicing, any comments in the Fiserv system between February and September of 2013 were not visible to Ocwen employees utilizing RealServicing. (*Id*. at 68:22-69:9.)

10. For Ocwen employees seeing the Thakkar loan in RealServicing in September 2013, the Thakkar loan would appear to have first been serviced by Ocwen in September 2013 and would not have the comments log from the period of February to September 2013. (*Id*. at 72:6-73:22.)

11. Ocwen was criticized by the New York Department of Financial Services for an inability to integrate the legacy systems acquired from other mortgage servicers into its RealServicing platform. (Thakkar Ex. 5.)

12. The consent decree resulted from a series of regulatory actions by the NYDFS.

(Thakkar Exs. 6-7.)

13.   The second consent decree called for the retention of a compliance monitor to oversee Ocwen's compliance with its agreements with the NYDFS. (Thakkar Ex. 7.)

14.   The compliance monitor began work in July 2013. (Thakkar Ex. 5 at ¶10.)

15.   The compliance monitor identified, among other things, inadequate and ineffective information technology systems and personnel.  (*Id.* at ¶13.)

16.   The compliance monitor determined that Ocwen's information technology systems are a patchwork of legacy systems and systems inherited from acquired companies, many of which are incompatible. A frequent occurrence is that a fix to one system creates unintended consequences in other systems. As a result, Ocwen regularly gives borrowers incorrect or outdated information, sends borrowers backdated letters, unreliably tracks data for investors, and maintains inaccurate records. There are insufficient controls in place—either manual or automated—to catch all of these errors and resolve them.  (*Id.* at ¶14.)

17.   Ocwen's core servicing functions rely on its inadequate systems. Specifically, Ocwen uses comment codes entered either manually or automatically to service its portfolio; each code initiates a process, such as sending a delinquency letter to a borrower, or referring a loan to foreclosure counsel. With Ocwen's rapid growth and acquisitions of other servicers, the number of Ocwen's comment codes has ballooned to more than 8,400 such codes. Often, due to insufficient integration following acquisitions of other servicers, there are duplicate codes that perform the same function. The result is an unnecessarily complex system of comment codes, including, for example, 50 different codes for the single function of assigning a struggling borrower a designated customer care representative.  (*Id.* at ¶17.)

18.   Despite these issues, Ocwen continues to rely on those systems to service its portfolio of distressed loans. Ocwen's inadequate infrastructure and ineffective personnel have resulted in

Ocwen's failure to fulfill its legal obligations. Prior to the Department's and the Compliance Monitor's review, Ocwen did not take adequate steps to implement reforms that it was legally obligated to implement pursuant to the 2011 Agreement. (*Id*. at ¶¶18-19.)

19. Ocwen does not have a definition for vacancy or abandoned for purposes of determining occupancy of a property. (Ocwen Dep., Dkt. #236-8 at 91:5-92:8.)

20. Initially, Ocwen requests an exterior drive by inspection from Altisource when a property becomes 45 days delinquent in Ocwen's system. (*Id*. at 74:11-14.)

21. The first Ocwen exterior inspection after the Thakkar loan was onboarded into RealServicing occurred on September 14, 2013 and determined the Thakkar property was vacant. (*Id*. at 128:3-130:20.)

22. A drive by inspection finding that a property is vacant triggers Ocwen to send a 15-day vacancy letter. (*Id*. at 79:5-80:4.)

23. Ocwen deems any property reported to be vacant as "unsecured." (*Id*. at 92:10-16.)

24. After a consumer's property is determined to be vacant, Ocwen's servicing guidelines require the property to be secured within a certain amount of time. (*Id*. at 88:9-21.)

25. Ocwen claims to have mailed a 15-day vacancy letter to Thakkar dated September 17, 2013 on September 20, 2013. However, Thakkar disputes receiving the letter. (*See* Thakkar's response to Ocwen SOF ¶48.) Also, Ocwen's cited evidence for mailing the letter does not support the proposed fact, lacks foundation, and lacks personal knowledge, because the deponent does not allege the vacancy letter was mailed by Ocwen but rather by some unknown/unidentified outside vendor and Ocwen cannot point out in its records where the "sequence" that indicates the letter was actually mailed is actually in RealServicing or any records produced by Ocwen. (Ocwen Dep., Dkt. #236-8 at 102:4-107:15, 137:18-141:2.) Thakkar denies ever seeing said letter. (2016 Thakkar Dep., Dkt. #236-1 at 180:17-181:16).

26. Ocwen has been criticized by a regulator for mailing time sensitive letters to consumers that were backdated. Doc. (Ocwen Dep., Dkt. #236-8 at 107:16-22; Thakkar Ex. 5 at ¶14).

27. If Ocwen receives no response to a vacancy letter, Ocwen will request that Altisource secure the property which includes changing the locks and placing a lockbox on the door. (*Id*. at 108:22-110:11).

28. The first order to secure Thakkar's property was issued on October 4, 2013, which was only fourteen days after Ocwen claims to have mailed the letter on September 20, 2013. (*Id*. at 192:9-12-16 and 193:10-13).

29. On October 4, 2013, Ocwen spoke with Thakkar on at least six separate telephone calls, wherein Thakkar inquired about the alleged outstanding balance due, disputed the amount, and requested verification and research into the fees assessed by Ocwen. (Thakkar Ex. 1 at pp. 4-5, entries timestamped 10/14/2013 at 1:27:10pm, 1:35:09pm, 2:00:42pm, 2:10:37pm, 2:21:09pm, and 3:15:24pm).

30. Ocwen does not train its employees to ask consumers if they reside in the property after Ocwen has received a report of vacancy no matter how many times Ocwen talks to the consumer after the vacancy determination. (Ocwen Dep., Dkt. #236-8 at 82:3-83:14, 85:11-88:8).

31. When Thakkar called Ocwen and Altisource regarding the loan account and the break-ins, he was authorized by his uncle to do so. (2016 Thakkar Dep., Dkt. #236-1 at 82:19-82:6, 86:1; Ocwen Dep., Dkt. #236-8 at 195:1-4).

32. Ocwen had also established Thakkar as an "authorized user" on the account and expressly directed Thakkar, whenever he called regarding the loan account, to provide his uncle's name and SSN. (Thakkar Ex. 1 at p. 4 [entry dated 10/4/2013 at 1:29:27pm]; Ocwen

Dep., Dkt. #236-8 at 195:1-4).

33. On October 7, 2013, Thakkar made a payment to cure Ocwen's claimed deficiency. The payment was received and applied to the Thakkar account on October 7, 2013, making the loan no longer in default, according to Ocwen. After this payment, according to Ocwen's records, Thakkar was only due for his October 1, 2013 payment. (Ocwen Dep., Dkt. #236-8 at 191:21-192:8).

34. Ocwen's records show that the work orders issued on October 4, 2013 were completed on October 8, 2013, but Thakkar's loan was not contractually delinquent on October 7 or 8, 2013. (Ocwen Dep., Dkt. #236-8 at 209:2-210:5).

35. October 8, 2013 was the first break-in. (Green Group Dep., Dkt. #236-9 at 44:8-13).

36. Thakkar's property would not have been secured absent Ocwen's order to secure the property. (Ocwen Dep., Dkt. #236-8 at 124:5-11).

37. Ocwen did not obtain any court's permission to enter Thakkar's premises in October of 2013 and Ocwen has never sought any court's permission to enter any consumer's property in the State of Illinois at any time between 2013 and the date of Ocwen's deposition. (*Id*. at 211:3-213:22).

38. Ocwen processed the payoff of the Thakkar loan on December 26, 2013. (*Id*. at 252:16-253:4).

39. After the Thakkar loan payoff was processed, Altisource generated work orders in Ocwen's system for additional property preservation services; but Ocwen cannot explain how Altisource was able to generate work orders in Ocwen's system of record, and Ocwen claims it did not request these services be performed. (*Id*. at 254:1-256:19).

40. In February 2014 and March 2014, Ocwen knew that Altisource had gone to the Thakkar property, changed the locks, and put a lock box on the property after it was paid off; but

Ocwen did not provide that information to the Naperville Police Department despite their request for that information. (*Id*. at 258:13-261:12).

Dated: November 19, 2018                      Respectfully submitted,

                                              */s/ Nick Wooten*
                                              Nicholas Heath Wooten
                                              Nick Wooten, LLC
                                              4935 Bay Hill Drive
                                              Conway, AR 72034
                                              nick@nickwooten.com

                                              */s/ Stephen Sotelo*
                                              Stephen T. Sotelo
                                              The Homer Law Firm, P.C.
                                              Fifth Avenue Station
                                              200 E. 5th Avenue, Suite 123
                                              Naperville, IL 60563
                                              ssotelo@homerlawoffices.com

                                              */s/ Ross Zambon*
                                              Ross Michael Zambon
                                              Zambon Law, Ltd.
                                              (of counsel Sulaiman Law Group, Ltd.)
                                              2500 S. Highland Ave., Suite 200
                                              Lombard, Illinois 60148
                                              rzambon@sulaimanlaw.com

                                              *Attorneys for Plaintiff Nirav Thakkar*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on November 19, 2018 a true and correct copy of the foregoing PLAINTIFF NIRAV THAKKAR'S LOCAL RULE 56.1(b)(3)(C) STATEMENT OF ADDITIONAL MATERIAL FACTS IN RESPONSE TO OCWEN'S MOTION FOR SUMMARY JUDGMENT was served upon all counsel of record for the Defendants via electronic filing.

*/s/ Nick Wooten*
Nicholas Heath Wooten
Nick Wooten, LLC