NEW YORK STATE DEPARTMENT
OF FINANCIAL SERVICES

**EXHIBIT 2**
Feezer Deposition

In the Matter of

OCWEN LOAN SERVICING, LLC

## CONSENT ORDER UNDER
## NEW YORK BANKING LAW § 44

WHEREAS, Ocwen Financial Corporation, the parent company of Ocwen Loan Servicing, LLC (collectively, "Ocwen"), is one of the largest mortgage loan servicers in the United States, servicing more than 40,000 residential home loan accounts in New York held largely by distressed homeowners;

WHEREAS, in the past two years, Ocwen has acquired several major servicers of home loans, including Litton Loan Servicing LP in 2011, as well as servicing rights from Saxon Mortgage Services, Inc. and JP Morgan Chase, Inc. in 2012, and has announced plans to further expand its servicing operations through the acquisition of additional mortgage servicing rights, including from Homeward Residential, Inc., formerly known as American Home Mortgage Servicing, Inc. ("AHMSI") and Residential Capital, LLC ("ResCAP");

WHEREAS, on September 1, 2011, in connection with Ocwen's acquisition of Litton and amid concerns regarding Ocwen's rapid growth and capacity to properly board a significant portfolio of distressed home loans, Ocwen and the New York State Department of Financial

Services (the "Department") (together, the "Parties") entered into an Agreement on Mortgage Servicing Practices (the "Agreement") which required Ocwen to: (1) establish and maintain sufficient capacity to properly board and manage its significant portfolio of distressed loans; (2) engage in sound document execution and retention practices to ensure that mortgage files were accurate, complete, and reliable; and (3) implement a system of robust internal controls and oversight with respect to mortgage servicing practices performed by its staff and third-party vendors;

WHEREAS, on December 15, 2011, the Agreement was amended to prevent Ocwen, among other things, from charging borrowers penalties, fees, costs and interest as a result of delays in court appearances caused by the closure of the law firm of Steven J. Baum, one of Ocwen's New York foreclosure counsel, following widespread allegations of improper foreclosure practices by the firm;

WHEREAS, on June 13, 2012, the Department conducted a targeted examination of Ocwen to assess its compliance with the Agreement and Part 419 of the Superintendent's Regulations, which govern business conduct rules for servicers;

WHEREAS, the examination preliminarily identified gaps in the servicing records of certain loans that the Department believes indicate non-compliance by Ocwen, including, in some instances: (1) failing to send borrowers a 90-day notice prior to commencing a foreclosure action as required under Real Property Actions and Proceedings Law ("RPAPL") § 1304; (2) commencing foreclosure actions on subprime loans without affirmatively alleging in the complaint that Ocwen has standing to bring the foreclosure action as required under RPAPL § 1302; and (3) commencing foreclosure actions without sufficient documentation of its standing to do so;

WHEREAS, the examination also preliminarily identified instances that the Department believes indicate non-compliance with the Agreement by Ocwen, including, in some instances: (1) failing to provide certain borrowers direct contact information for their designated loss mitigation staff or a single point of contact ("SPOC"); (2) pursuing foreclosure actions against certain borrowers who are seeking a loan modification (referred to in the Agreement as "dual tracking"); (3) failing to conduct an independent review of certain loan modification denials; (4) failing to demonstrate its adoption of policies and procedures to effectively track sanctioned third-party vendors, including local foreclosure counsel; (5) failing to demonstrate its implementation of policies and procedures to verify borrower information on newly boarded accounts to accurately reflect the status and current balance of the borrower's account; and (6) failing to sufficiently document actions required to ensure that prior modification efforts are not rendered futile upon transfer of a servicing file to or from Ocwen;

WHEREAS, the Department has preliminary concerns that Ocwen's practices have, in some instances: (1) deprived certain struggling homeowners in New York of many opportunities, including to cure the delinquencies on their loans before a foreclosure action was commenced; and (2) failing to provide certain homeowners information on where to contact a housing counselor to assist in reaching a resolution with their lender;

WHEREAS, the Department believes the preliminary evidence of non-compliance warrants the appointment of an independent monitor to conduct a comprehensive review of Ocwen's mortgage servicing files and practices, to which Ocwen has consented;

NOW, THEREFORE, the Parties are willing to resolve the matters cited herein as follows:

## SETTLEMENT PROVISIONS

**Mortgage Servicing Practices Compliance Review:**

1. Within twenty (20) days of executing the Consent Order, Ocwen will identify an independent on-site monitor acceptable to the Department (the "Compliance Monitor") who will report directly to the Department to conduct a comprehensive review (the "Compliance Review") of Ocwen's servicing operations, including its compliance program and operational policies and procedures.

2. The Compliance Monitor will review and assess Ocwen's operations with respect to loans on 1-4 family residential property located in the State of New York, including any loans acquired during the term of the Compliance Monitor. Such review will, at a minimum, address the following:

   a. The adequacy of Ocwen's staffing levels for delinquent loans, loans in imminent risk of default and loans in default, including loans in foreclosure. The analysis should include the factors outlined in Paragraph 15 of the Agreement.

   b. The robustness of established policies and procedures governing loss mitigation programs and foreclosure alternatives, independent reviews of loan modifications, execution of documents, and dual tracking of defaulted loans.

   c. The fairness of servicing fees and foreclosure charges, including the elimination of penalties, fees, costs or interest associated with delays in court appearances as a direct result of the closing of the Steven J. Baum law firm and the substitution of counsel.

   d. The accuracy of borrower account information for all loans serviced or sub-serviced by Ocwen.

   e. Ocwen's compliance with state and federal law, including Part 419 of the Superintendent's Regulations and with the Agreement.

4

f.  Review by the Compliance Monitor of borrower complaints and recordings of customer service, including those of the Collections and Loss Mitigation Units, to assess the quality of information provided via telephone, as well as borrowers' satisfaction with complaints and customer service assistance, and Ocwen's ability to resolve borrower inquiries and complaints in a timely manner.

3.  Based on the Compliance Review, the Compliance Monitor will identify needed corrective measures to address identified weaknesses and deficiencies in Ocwen's servicing practices, make recommendations to the Superintendent, and oversee their implementation as approved by the Superintendent. The Compliance Monitor will also periodically review and assess Ocwen's compliance with recommended corrective measures, as provided in paragraph 7 of this Order.

4.  Ocwen agrees to cooperate fully with the Compliance Monitor by, including but not limited to, providing the Compliance Monitor access to all relevant personnel and records necessary, including those at any overseas locations, to allow the Monitor to fulfill its duties. Any confidential customer and/or proprietary Ocwen information provided to the Monitor will remain the sole property of Ocwen and will be treated as confidential information, subject to reporting provisions outlined in this Order.

5.  The terms of the Compliance Monitor will extend for a period of twenty-four (24) months from the date of formal engagement. Any dispute as to the scope of the Compliance Monitor's authority will be resolved by the Department in the exercise of its sole discretion after appropriate consultation with Ocwen and/or the Compliance Monitor.

6. Within thirty (30) days of executing the Consent Order, Ocwen will submit to the Department for approval the proposed terms of the Compliance Monitor's engagement (the "Engagement Letter"). Ocwen will pay all reasonable and necessary costs of the Monitor.

7. Within ninety (90) days of Ocwen's receipt of the Department's written approval of such terms, the Compliance Monitor will submit to the Parties a written report of findings, including, if necessary, any proposed corrective measures from the Compliance review (the "Compliance Review Report"). The Compliance Monitor will submit written monthly action progress reports ("Progress Reports") to the Parties. On a quarterly basis, beginning on June 20, 2013, the Monitor will issue a Progress Report covering the three-month period immediately preceding.

8. Within sixty (60) days of the receipt of the Compliance Review report, Ocwen will submit to the Department for approval a written plan that is designed to improve and enhance Ocwen's servicing of mortgage loans on 1-4 family residential property located in New York State incorporating any corrective measures outlined in the Compliance Review Report (the "Action Plan"). The Action Plan will provide for any enhanced internal controls and updates and/or revisions to current policies, procedures and processes in order to ensure full compliance with all applicable provisions of the Agreement, Superintendent's Regulation Part 419, state and federal regulations governing the servicing of residential mortgage loans, and the requirements of this Consent Order. Upon receipt of written approval of the Action Plan by the Department, Ocwen will begin to implement the necessary changes.

**Breach of the Consent Order:**

9. In the event that the Department believes Ocwen to be materially in breach of the Consent Order ("Breach"), the Department will provide written notice to Ocwen of the Breach

and Ocwen must, within ten (10) business days from the date of receipt of said notice, or on a later date if so determined in the sole discretion of the Department, appear before the Department to demonstrate that no Breach has occurred or, to the extent pertinent, that the Breach is not material or has been cured.

10. The Parties understand and agree that Ocwen's failure to make the required demonstration within the specified period is presumptive evidence of Ocwen's Breach. Upon a finding of Breach, the Department has all the remedies available to it under the New York Banking and Financial Services Laws and may use any and all evidence available to the Department for all ensuing hearings, notices, orders, and other remedies that may be available under New York Banking and Financial Services Laws.

**Waiver of Rights:**

11. The Parties further understand and agree that no provision of the Consent Order is subject to review in any court or tribunal outside the Department.

**Parties Bound by the Consent Order:**

12. It is further understood that the Consent Order is binding on the Department and Ocwen, as well as their successors and assigns that are within the supervision of the Department, but it specifically does not bind any federal or other state agencies or any law enforcement authorities.

13. During the period in which the Consent Order remains in effect, the approved Plans and Engagement Letter as referenced herein will not be amended or rescinded without the prior written approval of the Department, other than amendments necessary to comply with applicable laws and regulations.

14. Within ten (10) days after the end of each quarter following the execution of the Consent Order, Ocwen will submit to the Department written progress reports detailing the form and manner of all actions taken to secure compliance with the provisions of the Consent Order and the results thereof. The Department may, in writing, and in its discretion, discontinue the requirement for progress reports or modify the reporting schedule.

**Notices:**

15. All communications regarding this order will be sent to:

Gaurav Vasisht
Executive Deputy Superintendent
Banking Division
New York State Department of Financial Services
One State Street
New York, NY 10004

Ronald M. Faris
Chief Executive Officer
Ocwen Financial Corporation
1661 Worthington Road
West Palm Beach, FL 33416

**Miscellaneous:**

16. Each provision of the Consent Order will remain effective and enforceable for a period of 24 months from the date hereof unless stayed, modified, terminated or suspended in writing by both Parties.

17. No promise, assurance, representation, or understanding other than those contained in the Consent Order have been made to induce any Party to agree to the provisions of the Consent Order.

18. Nothing in this Consent Order shall preclude the Department from pursuing any examination, enforcement action or additional agreement with Ocwen relating to the subject of this Consent Order.

8

IN WITNESS WHEREOF, the Parties have caused this Consent Order to be executed as of this 5th day of December, 2012.

OCWEN FINANCIAL CORPORATION

By: _____
Ronald M. Faris
President and CEO

NEW YORK STATE
DEPARTMENT OF FINANCIAL SERVICES

By: _____
Benjamin M. Lawsky
Superintendent